487 A.2d 320

**Michael DALEY**

v.

**STATE of Maryland.**

Post Conviction No. 162, Sept. Term, 1984.

Court of Special Appeals of Maryland.

Feb. 6, 1985.

---

Jack A. Bernstein, Baltimore City, for applicant.

Stephen H. Sachs, Atty. Gen., with whom was Kurt L. Schmoke, State's Atty., for Baltimore City, for respondent.

Submitted to GILBERT, C.J., and ADKINS and BLOOM, JJ.

PER CURIAM.

██ The application of Michael Daley for leave to appeal from a denial of post conviction relief by the Circuit Court for Baltimore City is denied for the reasons set forth in the opinion of Judge Martin B. Greenfeld, which opinion is expressly adopted as the opinion of this Court.

"This is Petitioner's first Petition for relief under the Uniform Post Conviction Procedure Act, Article 27, §§ 645A–645J, inclusive, of the Annotated Code of Maryland. A hearing was held on this Petition on October 19, 1984.

Petitioner pleaded guilty on October 7, 1982 before Judge James W. Murphy to possession of marijuana with intent to distribute. He was given a 2-year suspended sentence and placed on 3 years of supervised probation. ·

Petitioner asserts that his guilty plea was not voluntarily and knowingly made because at that time he was not informed either by the court or his attorney that deportation was a possible consequence of pleading guilty. Petitioner testified at the post-conviction hearing to the following: that he is a native of Jamaica and has resided in the United States since 1974; that when he entered his guilty plea, he had the status of a 'resident alien'; that he then possessed and continues to possess a so-called 'green card' (an alien registration card issued by the U.S. Immigration and Naturalization Service), which entitles him to continued residence in this country; and that at the time of his guilty plea he knew that he was required to 'obey all laws' of the United States as a condition of retaining his green card and remaining in this country. Moreover, when he pleaded guilty, Petitioner admitted committing the offense with which he was charged (T.8–9).

Almost two years after his guilty plea and conviction, deportation proceedings were instituted against him pursuant to 8 U.S.C. § 1251(a)(11).[1] No hearing has yet been scheduled on those charges.

Petitioner's first contention is that the court had a duty to inform him of the consequence of deportation pursuant to former Maryland Rule 731c, then in effect, which stated:

The Court may not accept a plea of guilty without first questioning the defendant on the record to determine that the plea is made voluntarily, with understanding of the nature of the charge *and the consequences of the plea.* [Emphasis added.]

The phrase, 'the consequences of the plea,' has been construed in Maryland to impose upon trial judges the duty to inform defendants of direct consequences of pleading guilty, such as the maximum potential sentence. *Bryant v. State,* 47 Md.App. 551, 424 A.2d 1115 (1981). Courts in other states distinguish between direct and collateral consequences, requiring courts to inform defendants of the former, but not of the latter. *See, e.g. State v. Malik,* 680 P.2d 770 (Wash.App.1984) (a deportation case); *State v. Fournier,* 118 N.H. 230, 385 A.2d 223 (N.H.1978). Whether this distinction applies in Maryland has not been found in any reported Maryland appellate decision, though cases have held that

courts have no duty to inform defendants of such consequences as the possibility of reference to Patuxent Institution, *Smith v. Director*, 13 Md.App. 53, 280 A.2d 910 (1971),2 or the nature of a suspended sentence on probation, *Durbin v. State*, 56 Md.App. 442, 468 A.2d 145 (1983).

In *Bryant v. State*, 47 Md.App. 551, 424 A.2d 1115 (1981), the Court of Special Appeals vacated the defendant's guilty plea on the ground that the trial court failed to inform him of the maximum statutory sentence. In arriving at its decision, the Court looked for guidance to federal cases interpreting Rule 11c of the Federal Rules of Criminal Procedure, which states:

> Before accepting a plea of guilty or nolo contendere, the Court must address the defendant personally in open court and inform him of, and determine that he understands the following:
>
> (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law....

Prior to 1974, as *Bryant* points out at 556, 424 A.2d 1115, Rule 11c required defendants to be informed of "the consequences of the plea," which is the precise language used in former Maryland Rule 731c. Federal courts have uniformly interpreted this language to require trial courts to inform defendants only of direct, as opposed to collateral, consequences. *See, e.g., Cuthrell v. Director*, 475 F.2d 1364 (4th Cir.1973); *Michel v. U.S.*, 507 F.2d 461 (2d Cir.1974); *Fruchtman v. Kenton*, 531 F.2d 946 (9th Cir.1976); *Cordero v. U.S.*, 533 F.2d 723 (1st Cir.1976); *U.S. v. Cariola*, 323 F.2d 180 (3d Cir.1963); *U.S. v. Parrino*, 212 F.2d 919 (2d Cir.1954), *cert. denied*, 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954); *Meaton v. U.S.*, 328 F.2d 379 (5th Cir.1964) *cert. denied*, 380 U.S. 916, 85 S.Ct. 902, 13 L.Ed.2d 801 (1965). Two of these cases specifically dealt with deportation proceedings and held them to be collateral consequences about which the defendant need not be informed by the court. *See Cordero v. U.S.*, 533 F.2d at 726: 'We are not disposed to treat deportation differently from all of the other collateral consequences...'; and *Michel v. U.S.*, 507 F.2d at 465, holding that consequences such as deportation are collateral since they are civil proceedings administered by another agency over which the trial judge has no control.

The United States Court of Appeals for the Fourth Circuit ruled similarly on the same issue, although not in the context of deportation. In *Cuthrell v. Director, Patuxent Institution*, 475 F.2d 1364 (4th Cir.1973), the defendant challenged the voluntariness of his guilty plea in a habeas corpus proceeding on the grounds that he was not informed of the possibility of commitment to Patuxent Institution pursuant to the Maryland Defective Delinquent Act. In dismissing the defendant's petition, the court held that failure to advise the defendant of this collateral consequence—a commitment resulting from a separate civil proceeding to determine whether the defendant was, in fact, a defective delinquent—did not render the defendant's guilty plea involuntary. A consequence was considered to be direct only if 'the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment.' *Id.* at 1366.

Applying the *Cuthrell* criteria to the present case, it is abundantly clear that Petitioner's possible deportation is merely collateral to his guilty plea. First, the consequence of deportation arises from a separate civil proceeding. Whereas Petitioner's guilty plea was entered in state criminal court, deportation is

adjudicated in federal civil court. Furthermore, deportation is neither 'definite' nor 'largely automatic'; Federal law permits Petitioner to apply for suspension of deportation for humanitarian reasons pursuant to 8 U.S.C. § 1254(a)(2). Finally, it is not altogether certain that deportation is 'immediate.' Petitioner entered his guilty plea in October of 1982. Nearly two years later he received a notice informing him of pending deportation proceedings. (*See* Petitioner's Exhibit 1). Moreover, Petitioner testified that what triggered the immigration authorities' inquiry into his record was his March, 1984 re-entry into this country after a brief visit to Jamaica. Had Petitioner not left and re-entered the United States, deportation proceedings might never have been instituted.

Even the two cases primarily relied on by Petitioner adhere to the principle that the court's failure to inform the Defendant of this consequence does not invalidate the guilty plea. See *Edwards v. State*, 393 So.2d 597, 598 (Fla.App. 1981) ('We first hold that it is not the responsibility of the trial court to advise a defendant of federal deportation consequences at the time of taking a guilty plea, and the trial court's omission of this advice does not render the plea involuntary.'); *Commonwealth v. Wellington*, 305 Pa.Super. 24, 27, 451 A.2d 223 (1982) ('Courts have thus consistently held that a trial court's failure to inform a defendant of [deportation] does not invalidate his plea. Accordingly, we cannot find the court's omission to be a basis for allowing appellant to withdraw her guilty plea.').[3]

Petitioner seeks to bolster his position by calling to the court's attention the fact that five states have recently enacted legislation specifically requiring trial courts to advise alien defendants, prior to acceptance of their guilty pleas, of the possibility of deportation. This hinders, rather than supports, Petitioner's contention, for they only serve to change prevailing case law. In the absence of such a statute in Maryland, this court is constrained to follow the overwhelming weight of authority in this country that the trial court's failure to advise Petitioner of possible deportation proceedings did not affect the voluntariness of his guilty plea. Petitioner's first contention is therefore denied.

Petitioner's second contention is that he was denied the effective assistance of counsel because his lawyer failed to inform him of the possibility of deportation.[4] The factual predicate necessary to succeed on this claim—namely, that his lawyer knew or should have known that he was an alien—is absent. Petitioner testified that although he never told his attorney that he was an alien, he nevertheless expected his attorney to figure out that he was an alien just from hearing his foreign accent.[5] Since the attorney was not called to testify, what the attorney knew or should have known would be mere speculation.

In any event, Petitioner admitted that he knew he must 'obey all laws' if he was to remain in this country. When Petitioner admitted his guilt when he pleaded guilty, he knew, or should reasonably have known, that this amounted to a failure to obey all laws, which fact would put his continued presence in the United States in jeopardy. Therefore, Petitioner possessed the very knowledge that he claims his attorney should have given him. Consequently, the failure of the trial attorney to provide this advice did not prejudice Petitioner.

The two cases relied on by Petitioner, *Edwards v. State*, 393 So.2d 597 (Fla.App.1981) and *Commonwealth v. Wellington*, 305 Pa.Super. 24, 451 A.2d 223 (1982), are inapposite. They are based upon the factual premise that relief can be granted if a defendant who pleads guilty is "otherwise unaware of the consequence of deportation." *Edwards v. State*, 393 So.2d at 600. In the case

here under consideration, Petitioner did have knowledge of the risk of deportation. His second contention must also be denied.

1 This section states:

§ 1251 Deportable aliens

(a) General classes

Any alien in the United States ... shall, upon the order of the Attorney General be deported who—

    *      *      *

(11) is, or hereafter at any time after entry has been, ... convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana....

2 When *Smith* was decided, sentences to Patuxent Institution were permitted to be indeterminate pursuant to former Article 31B.

3 These cases do, however, lend limited support to Petitioner's second contention discussed *infra*.

4 Petitioner first raised this issue at the hearing. No mention of it appears in his Petition. The court addresses this issue so as to avoid a second post conviction petition on this related issue.

5 The court observed the Petitioner to speak fluent English with a Carribean accent."

## APPLICATION FOR LEAVE TO APPEAL DENIED.