766 P.2d 110

**STATE of Arizona, Appellee,**

v.

**Armando VERA, Appellant.**

**No. 1 CA–CR 12022.**

Court of Appeals of Arizona,
Division 1, Department B.

Oct. 13, 1988.

Review Denied Jan. 24, 1989.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., and Barbara A. Jarrett, Asst. Atty. Gen., Phoenix, for appellee.

Law Office of Michelle Ratner by Michelle Ratner, Phoenix, for appellant.

## OPINION

EUBANK, Judge.

Appellant was charged with arson of an occupied structure and pled guilty to that offense, a class two felony, in violation of A.R.S. § 13–1704. Appellant stipulated to the payment of restitution in the plea agreement. He was later sentenced to seven years imprisonment and ordered to pay $8,700 in restitution.

The charges in this case arose from a fire which appellant set in the residence of his girlfriend, whom he later married.

On appeal, appellant argues:

1. His guilty plea was not knowingly and intelligently entered because he was not fully informed of the consequences of his plea.

2. The order of restitution was improper.

## VOLUNTARINESS OF APPELLANT'S PLEA

Appellant argues that his plea was not knowingly and intelligently entered because he was not advised that as an alien his guilty plea could affect his eligibility to remain in or reenter this country if he were deported. Appellant argues that in order for a plea to be intelligently made, he must understand its consequences, including the consequences of a plea on an alien's immigration status. He also suggests that he did not understand that the plea could affect his ability to become a citizen. He concludes that the trial court's failure to determine that the guilty plea was thus intelligently and knowingly entered requires that the judgment of guilt and sentence be vacated. The state argues that a trial court is not required to inform a defendant of every collateral consequence of a plea and the fact that a defendant may face deportation as a result of a guilty plea is such a consequence.

In support of his position, appellant relies on *Martinez v. State*, 475 So.2d 1292 (Fla.App.1985). *Martinez* simply followed a rule adopted in *Edwards v. State*, 393 So.2d 597 (Fla.App.1981), which was disapproved in *State v. Ginebra*, 511 So.2d 960 (Fla.1987) and *State v. Fundora*, 513 So.2d 122 (Fla.1987). In *Ginebra* the court noted that *Edwards* had concluded that although deportation was a collateral, rather than direct, consequence of a plea, the severity of the sanction rendered it a "unique collateral consequence" justifying special treatment. 511 So.2d at 960. The court observed that deportation was not a direct consequence of a guilty plea because the trial court had no authority concerning deportation. *Id.* at 961. Furthermore, the court noted that the majority of federal courts have held that failure to advise a defendant that deportation may follow from a guilty plea does not constitute ineffective assistance of counsel. *Id.* The court in *Ginebra* held that counsel's failure to advise a client of the collateral consequences of deportation did not, as a matter of law, constitute ineffective assistance of counsel. *Id.* at 962.

The majority of federal courts have held that deportation is a "collateral consequence to a plea of guilty and, therefore, a trial judge is not required to inform the defendant of that consequence." *See, United States v. Campbell*, 778 F.2d 764 (11th Cir.1985); *Sanchez v. United States*, 572 F.2d 210, 211 (9th Cir.1977) ("potential deportation of an alien defendant is deemed a collateral consequence of his guilty plea because that sanction is controlled by an agency which operates beyond the direct authority of the trial judge."); *Fruchtman v. Kenton*, 531 F.2d 946 (9th Cir.1976); *Nunez–Cordero v. United States*, 533 F.2d 723 (1st Cir.1976); *United States v. Santelises*, 476 F.2d 787, 790 (2nd Cir.1973) (the trial court's failure to inform a defendant that his guilty plea would subject him to deportation did not violate due process because "it is not such an absolute consequence of conviction that we are mandated to read into traditional notions of due process a requirement that a district judge must warn each defendant of the possibility of deportation."); *United States v. Parrino*, 212 F.2d 919 (2nd Cir.1954), *cert. denied*, 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954); *Government of the Virgin Islands v. Pamphile*, 604 F.Supp. 753 (D.V.I. 1985).

A number of state courts have also found that the possibility of deportation does not require a trial judge to inform a defendant of that consequence. *See Tafoya v. State*, 500 P.2d 247 (Alaska 1972), *cert. denied*, 410 U.S. 945, 93 S.Ct. 1389, 35 L.Ed.2d 611 (1973); *Mott v. State*, 407 N.W.2d 581 (Iowa 1987); *State v. Chung*, 210 N.J.Super. 427, 510 A.2d 72 (App.Div. 1986); *Daley v. State*, 61 Md.App. 486, 487 A.2d 320, 322 (1985) (the case noted that the majority of courts do not require a judge to advise a defendant of the prospects of deportation).

The law in Arizona is in accord with these various decisions from other state and federal jurisdictions. *See State v. Rodriguez*, 17 Ariz.App. 553, 499 P.2d 167 (1972). The court in *Rodriguez* noted that, "exposure to deportation has been classified as a collateral consequence as to which

no duty to inform arises." 17 Ariz.App. at 554, 499 P.2d 167. The court went on to hold that the possibility of deportation was not a direct consequence of the plea of guilty requiring a trial court to inform a defendant of the possibility of deportation. *But see, Comment Collateral Consequences to a Guilty Plea in the Federal Criminal Justice System* 16 Harvard Civil Rights—Civil Liberties Law Review 157 (1982). (The writer suggests that a due process analysis of the consequence of deportation leads to the conclusion that as a matter of federal constitutional law, a defendant should be advised of the possibility of deportation.)

■ A trial judge is not required under the Arizona Rules of Criminal Procedure or as a matter of due process to advise a defendant who pleads guilty pursuant to Rule 17.1, *et seq.,* Arizona Rules of Criminal Procedure, that he may be subject to deportation. *State v. Rodriguez, id.; United States v. Campbell; Sanchez v. United States, id.* Finally, we note that there is no evidence in the record to support appellant's claim on appeal that his trial counsel did not inform him of the consequences of possible deportation. Under those circumstances, we are unable to review the issue on appeal. *Cf., State v. Mohon,* 3 Ariz.App. 82, 412 P.2d 79 (1966) (where a defendant's appeal from conviction was predicated in part upon matters wholly outside the record and not presented to the trial court, the court of appeals could not consider the matter for the first time on appeal); *Daley v. State, id.* 487 A.2d at 320 (although the defendant claimed his counsel had not advised him that deportation was a possible consequence of a plea of guilty, there was no factual support in the record for such a claim and it would not be considered on appeal).

## ORDER OF RESTITUTION

■ The appellant in this case was ordered to pay $8,700 in restitution. In the sentencing order, the court ordered the amount to be paid within two years following release from custody or as ordered by the Board of Pardons and Paroles pursuant to A.R.S. § 31-412, whichever date first occurs. To the extent that the order granted the Board of Pardons and Paroles the authority to set the manner of payment of restitution, it was in error. *State v. Nosie,* 150 Ariz. 498, 724 P.2d 584 (App.1986).

■ Appellant argues that he had no assets or marketable skills at the time he was sentenced and that he will probably be deported upon release from prison. He therefore concludes that it is unrealistic to think that he can pay $8,700 upon his release and requests this court to require that the trial court make a "reasonable" order for payment of restitution. He concludes that there is no basis to believe that he can pay the amount of restitution in the manner ordered by the trial court.

A.R.S. § 13-603(C) requires that a defendant be required to pay restitution in the full amount of the economic loss suffered by the victim. There is no dispute in this case that the amount of $8,700 represents the amount of loss. The only issue raised by appellant deals with the "manner" of repayment of the loss. In *State v. Wilson,* 150 Ariz. 602, 608, 724 P.2d 1271 (App.1986), the court observed that when a person is sentenced to prison it is generally unrealistic to require a trial court to predict what the economic circumstances of the convicted person will be at the time he is released from incarceration. The court noted the economic circumstances of a defendant may change significantly when the time for payment arrives. In accordance with the court's prior holding in *State v. Currie,* 150 Ariz. 59, 721 P.2d 1186 (1986), the court in *Wilson* held that when convicted persons are released from incarceration, they could petition the trial court for a reconsideration of the manner of payment. At the time of release from incarceration, the trial judge can then realistically evaluate the economic circumstances of the convicted person in dealing with the matter of payment of restitution. *State v. Wilson,* 150 Ariz. at 608, 724 P.2d 1271. In the event appellant is unable to make the restitution payments required by the court, he

may petition the court upon his release for a change in the manner of payment.

JUDGMENT AND SENTENCE AFFIRMED.

JACOBSON, J., concurs.

FIDEL, Presiding Judge, specially concurring:

I concur in the decision of the majority because, as indicated by the majority, there is no evidence in the record to support appellant's claim that his trial counsel failed to inform him that deportation would result from his plea. Whether deportation can be dismissed as merely a "collateral consequence" which need not be anticipated by a knowing pleader or whether it is so important a consequence that its risk must be explained is, in my view, so significant a question as to require eventual reexamination of *State v. Rodriguez.* *See Comment, Collateral Consequences to a Guilty Plea in the Federal Criminal Justice System,* 16 Harvard Civil Rights—Civil Liberties Law Review 157, 171–175 (1982). A prerequisite to such examination, however, would be a showing by petition for post-conviction relief, Rule 32, 17 A.R.S. Rules of Criminal Procedure, that the defendant neither knew of the consequence of deportation from counsel nor from any other source. Because there is no such showing in the present record, I concur in my colleagues' decision to affirm.