700 A.2d 251

David Teddy YOSWICK

v.

STATE of Maryland.

No. 139, Sept. Term, 1995.

Court of Appeals of Maryland.

Sept. 17, 1997.

230

Nancy S. Forster, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Ann N. Bosse, Asst. Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for respondent.

Argued before MURPHY, C.J.*, and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI **, BELL and RAKER, JJ.

RAKER, Judge.

In this case we must decide whether a judge's failure to advise a defendant offering to plead guilty of the parole consequences of the sentence renders the plea unknowing and involuntary. We shall hold that the trial court's failure to advise a defendant who is planning to plead guilty of parole consequences does not render a plea invalid because parole consequences are collateral rather than direct consequences of a guilty plea. We shall further hold that Petitioner failed to establish a violation of the Sixth Amendment right to effective assistance of counsel because the prejudice prong of *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), has not been satisfied.

## I.

David T. Yoswick, Petitioner, was indicted by the Grand Jury for Carroll County on twenty counts of criminal activity. On August 31, 1992, pursuant to a plea agreement, he pleaded guilty to attempted first degree murder, Maryland Code

---

* Murphy, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.

** Karwacki, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.

(1957, 1996 Repl.Vol.) Article 27, § 407 [1], and kidnapping, Article 27, § 337. In exchange for the plea, the State recommended and the court imposed a life sentence with all but forty years suspended on the attempted murder charge, and all but thirty years suspended on the kidnapping charge, to be served concurrently. As part of the plea agreement, the State entered a *nolle prosequi* to the remaining eighteen charges, and also agreed to recommend to other Maryland jurisdictions with pending charges stemming from this incident that they drop their charges. [2] Yoswick could have received up to life plus seventy years in prison on the Carroll County charges, and his exposure on the charges in the other jurisdictions was estimated to be approximately one hundred years.

On April 14, 1994, Yoswick filed a Petition for Post Conviction Relief, and on August 15, 1994, he filed an amended petition. The post conviction court denied relief, the Court of Special Appeals affirmed in an unreported opinion, and this Court granted certiorari to consider the following question:

Whether a defendant who pleads guilty and receives a life sentence with a portion suspended must be informed of the parole ramifications of the plea, and is the plea involuntary in any event if the defendant is wrongly informed by counsel about the requirements for parole eligibility?

## II.

We recount the facts surrounding the crimes. On February 25, 1992, Petitioner kidnapped Frank Storch from a Howard County motel, took him to another motel, handcuffed him, and kept him locked in the bathroom overnight. The following

---

1. Hereinafter, unless otherwise indicated, all statutory references shall be to Article 27 of the Maryland Code (1957, 1996 Repl.Vol.).

2. Handgun charges were pending against Yoswick in Howard County, and numerous other charges, including kidnapping, armed robbery, and use of a handgun in the commission of a crime of violence, could have been filed in Howard County or Anne Arundel County. The charges pending in Howard County were dismissed and no charges were filed in Anne Arundel County.

afternoon Yoswick drove Storch against his will to Carroll County. Upon arriving at their destination, Yoswick helped Storch out of the car, pulled out a knife, and stabbed Storch in the stomach. Storch managed to escape temporarily, but was caught by Yoswick at a nearby creek, where Yoswick then attempted to drown Storch by holding his head under water. After initially struggling, Storch ceased resisting and went limp in a ploy to convince Yoswick that he was dead. Yoswick released Storch, and left the scene. Storch got up and staggered to a nearby road where a passerby assisted him and took him to the Maryland Shock Trauma Unit, where he was treated for a severe abdominal wound, hand lacerations, and back and knee injuries.

On February 27, 1992, Yoswick drove to a landfill in Baltimore City and discarded a large plastic bag containing some of Storch's possessions, including Storch's driver's license, private investigator's license, credit cards, photographs, and a bloody shirt. Shortly thereafter, Yoswick was indicted by the Grand Jury for Carroll County in a twenty-count indictment, including attempted first degree murder, robbery and kidnapping.

Before the court accepted Yoswick's guilty plea, he was questioned extensively regarding his understanding of the plea. At that time, neither the court nor Yoswick's counsel discussed with him the parole consequences of his plea. The colloquy went as follows:

[DEFENSE COUNSEL]: May I qualify my client?

THE COURT: Please.

[DEFENSE COUNSEL]: David, first of all, how old are you, sir?

YOSWICK: Twenty-five years old—of age.

[DEFENSE COUNSEL]: And how far did you go in school?

YOSWICK: Twelfth grade.

[DEFENSE COUNSEL]: Are you able, then, to read and write and understand the English language?

YOSWICK: Yes, ma'am.

[DEFENSE COUNSEL]: Are you, today, under the influence of any drugs or alcohol or any other substance that would impair your ability to understand today's proceeding?

YOSWICK: No, ma'am.

[DEFENSE COUNSEL]: Mr. Yoswick, first of all, you understand that you have an absolute right to have a trial, which includes the right to have a trial by jury. Do you understand that?

YOSWICK: That's correct.

\*    \*  '  \*    \*    \*    \*

[DEFENSE COUNSEL]: Do you understand that you also have a right to waive a jury trial and to proceed with a court trial, in which case the court would have to be convinced of your guilt beyond a reasonable doubt before you could be convicted. Do you understand that?

YOSWICK: Yes, ma'am.

[DEFENSE COUNSEL]: Do you understand that whether you elected to have a jury trial or a court trial, in either event, you could force the State to prove its case against you. Do you understand that?

YOSWICK: That's correct.

[DEFENSE COUNSEL]: And by entering a Plea of Guilty, you're waiving or giving up that right, which would include the right to cross-examine witnesses called—witnesses called by the State, as well as the right to produce witnesses to testify in your defense. Do you understand that?

YOSWICK: That's correct.

[DEFENSE COUNSEL]: If you had a trial, you, likewise, would have the right to testify if you elected to. However, no one could force you to testify, and if you made an election not to, neither the court in a court trial nor a jury in a jury trial would be able to use that as evidence of your guilt. Do you understand that?

YOSWICK: That's correct.

\* \* \* \* \* \*

[DEFENSE COUNSEL]: Do you understand, further, that in exchange for your Plea to the first two counts—first of all, the State will nol-pros Counts Three through Twenty of the Indictment.

The Court has agreed on Count One to sentence you to a period of Life, suspending all but forty years; and with respect to the Second Count to sentence you to a period of thirty years to run concurrent with the forty-year sentence. Do you understand that?

YOSWICK: I understand that.

[DEFENSE COUNSEL]: Additionally, the State's Attorney has agreed to intercede on your behalf with other counties should there be an attempt by other counties to pursue charges arising out of this incident. Do you understand that?

YOSWICK: Yes, I do.

[DEFENSE COUNSEL]: Other than those agreements, has anyone made any promises, threats, or inducements to you in order to have you proceed in this fashion?

YOSWICK: No.

[DEFENSE COUNSEL]: Do you feel that—do you have any questions?

YOSWICK: No, I do not.

[DEFENSE COUNSEL]: Have you had an opportunity to fully consider the offer that's been made and your acceptance of it?

YOSWICK: Yes, I have.

[DEFENSE COUNSEL]: Do you have any questions?

YOSWICK: No, I haven't.

[DEFENSE COUNSEL]: Your honor, I submit that the plea is being freely and voluntarily tendered this morning.

As previously indicated, the court accepted the plea and sentenced Petitioner in accordance with the negotiated plea.

In his Amended Petition for Post Conviction Relief, Petitioner contended that: (1) his plea did not comply with Maryland Rule 4-242(c) because he was not informed that, in order to become eligible for parole, he had to first serve fifteen years, and (2) he received ineffective assistance of counsel because counsel misadvised him regarding the requirements for parole. The circuit court (Beck, J.) held an evidentiary hearing on the post conviction petition. Yoswick testified that he spoke with his trial attorney in August 1992, and she told him that if he accepted the State's plea offer, his sentence would be forty years and he would be eligible for parole after ten years. He further testified that he was never told that with a life sentence, all but forty years suspended, he would not be eligible for parole until after he had served fifteen years, nor was he told that he needed the Governor's approval to be paroled. He said that had he been advised correctly, he would not have pleaded guilty. His trial counsel also testified at the hearing. She stated that the original plea agreement was for a straight forty-year sentence and that she had called the parole commission and learned that an inmate must serve approximately one-fourth of his sentence before becoming eligible for parole. The plea agreement was later changed to a life sentence with all but forty years suspended. Defense counsel could not remember if she told Yoswick about parole eligibility restrictions imposed by Maryland Code (1957, 1990 Repl.Vol.), Article 41, § 4-516(b), the statutory provision in effect at the time.[3]

---

**3.** At the time Yoswick pleaded guilty in 1992, Maryland Code (1957, 1990 Repl.Vol.) Article 41, § 4-516(b) governed parole for prisoners serving life sentences and provided, in pertinent part:

(b)(1) Except as provided in paragraphs (2) and (3) of this subsection, a person who has been sentenced to life imprisonment is not eligible for parole consideration until the person has served 15 years or the equal of 15 years when considering the allowances for diminution of period of confinement provided for in Article 27, § 700 and Article 27, § 638C, of the Code.

\* \* \* \* \* \*

(4) If eligible for parole under this subsection, an inmate serving a term of life imprisonment and a person serving a term of life

The post conviction court rejected Petitioner's claims, concluding that the plea was knowing and voluntary. The court found that Petitioner had been apprised of the nature of the charges against him and the consequences of the plea. The court concluded that the requirement that an accused be informed of the "consequences of the plea" means that an accused must be informed only of the "direct" consequences of pleading guilty. Concluding that parole eligibility was not a direct consequence, the court determined that the defendant need not be informed of parole eligibility. Finally, assuming arguendo that defense counsel had misadvised Yoswick as to his parole eligibility, the post conviction court found that Yoswick was not denied effective assistance of counsel because he failed to satisfy the prejudice prong under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The court rejected Yoswick's claim that had he been properly advised, he would not have pleaded guilty. Rather, Judge Beck specifically found:

> With regard to the five (5) year discrepancy as to parole eligibility, the Court concludes that the defense was not prejudiced and a different outcome would not have resulted. Simply stated, the Court does not believe Petitioner's self-serving statement that he would not have pled guilty had he known the actual date for parole eligibility. Without the plea bargain, Petitioner faced a possible maximum sentence of life imprisonment plus seventy years. Additionally, there were charges arising out of this incident pending in Howard and Anne Arundel Counties which carried additional penalties totaling more than one hundred (100) years.

imprisonment who is confined at Patuxent Institution as an eligible person shall only be paroled with the approval of the Governor. Article 41, § 4–516 was subsequently amended such that this provision became § 4–516(d), rather than § 4–516(b), but otherwise remained the same. Hereinafter all references to Article 41 § 4–516 shall be to Maryland Code (1957, 1990 Repl.Vol.), the provision in effect at the time Yoswick pleaded guilty.

Petitioner's trial counsel vigorously defended him at a lengthy motions hearing after which she was able to secure what, in the Court's estimation, was an exceptionally generous plea bargain from the State limiting the period of incarceration to forty (40) years. Further, the pending charges in Howard and Anne Arundel Counties were resolved in such a manner that Petitioner received no additional period of incarceration.

The potential period of incarceration which Petitioner avoided by pleading guilty greatly outweighs the five (5) year differential in parole eligibility. Although Petitioner claims he would not have pled guilty had he known the truth, the Court finds this statement to be self-serving at best. Indeed, after applying the objective standard of review mandated by *Williams v. State, supra,* [326 Md. 367, 605 A.2d 103 (1992)] the Court cannot conclude that Petitioner suffered any prejudice as a result of the five (5) year discrepancy. Similarly, the Court cannot conclude that a different result would have been reached had Petitioner known the true parole eligibility date.

The Court of Special Appeals granted Yoswick's application for leave to appeal and held that a defendant must be advised only of direct consequences of a plea of guilty, and not collateral consequences. The intermediate appellate court held that parole eligibility is a collateral consequence of a plea of guilty and, accordingly, the trial court is not required to furnish a defendant with information about parole eligibility in order for a plea to be voluntary. We agree and shall affirm.

### III.

Before this Court, Yoswick contends that his guilty plea was not entered voluntarily, "with understanding of the consequences of the plea" as required by Maryland Rule 4–242(c). In support of this contention, he alleges that he was never informed of two particular consequences of his plea, namely, the fifteen-year period of parole ineligibility and the necessity of first obtaining the Governor's approval before he could be

paroled. *See* Art. 41, § 4–516. Petitioner contends that parole eligibility is a direct consequence of a guilty plea and, as a result, the failure of the court or counsel to provide such information renders his plea involuntary. He claims that his attorney told him that he would be eligible for parole in ten years and that this advice was so deficient that it rose to the level of ineffective assistance of counsel. Thus, Petitioner argues, he was prejudiced by counsel's deficient performance because there is a substantial possibility that he would not have pleaded guilty had he known that he would have to serve fifteen years of his sentence before becoming parole eligible. In response, the State argues that parole ineligibility is a collateral rather than a direct consequence of a guilty plea, and therefore, the failure of the circuit court to advise him of any parole ramifications did not render his plea involuntary. The State further contends that even if Yoswick's counsel was deficient, Yoswick suffered no prejudice.

## IV.

To be valid, a plea of guilty must be made voluntarily and intelligently, *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274, 279 (1969), with knowledge of the direct consequences of the plea. *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747, 760 (1970); *Hudson v. State*, 286 Md. 569, 595, 409 A.2d 692, 705 (1979), *cert. denied*, 449 U.S. 845, 101 S.Ct. 128, 66 L.Ed.2d 53 (1980). To ensure that a plea is valid, Maryland Rule 4–242 requires either the court or counsel to ask the defendant questions concerning the voluntariness of the plea. Maryland Rule 4–242(c) provides in pertinent part:

> The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea.

A direct consequence of a guilty plea has been defined as one that has "a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Cuthrell v. Director, Patuxent Inst.*, 475 F.2d 1364, 1366 (4th Cir.), *cert. denied*, 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973). The imposition of a sentence may have a number of collateral consequences and a plea of guilty is not rendered involuntary in the constitutional sense if the defendant is not informed of the collateral consequences. *Strader v. Garrison*, 611 F.2d 61, 63 (4th Cir.1979). Due Process does not require that a defendant be advised of the indirect or collateral consequences of a guilty plea, even if the consequences are foreseeable. *Parry v. Rosemeyer*, 64 F.3d 110, 114 (3rd Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 734, 133 L.Ed.2d 684 (1996). Accordingly, under Maryland Rule 4–242, the consequences of the plea include only direct consequences, not collateral or indirect consequences. *See Moore v. State*, 72 Md.App. 524, 526, 531 A.2d 1026, 1027 (1987) (concluding the possibility of an enhanced sentence is a collateral consequence); *Daley v. State*, 61 Md.App. 486, 489, 487 A.2d 320, 322 (1985) (reasoning deportation is a collateral consequence). Numerous other jurisdictions have also made this distinction. *See Parry*, 64 F.3d at 114; *United States v. Campusano*, 947 F.2d 1, 5 (1st Cir.1991); *United States v. Del Rosario*, 902 F.2d 55, 59 (D.C.Cir.), *cert. denied*, 498 U.S. 942, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990); *United States v. United States Currency, The Amount of $228,536.00*, 895 F.2d 908, 915–16 (2nd Cir.), *cert. denied sub nom. Parker v. United States*, 495 U.S. 958, 110 S.Ct. 2564, 109 L.Ed.2d 747 (1990); *Torrey v. Estelle*, 842 F.2d 234, 235–36 (9th Cir.1988); *George v. Black*, 732 F.2d 108, 110 (8th Cir.1984); *Cuthrell*, 475 F.2d at 1365–66; *State v. Ross*, 129 Wash.2d 279, 916 P.2d 405, 409 (1996); *People v. Ford*, 86 N.Y.2d 397, 633 N.Y.S.2d 270, 272–74, 657 N.E.2d 265, 267–68 (1995); *Com. v. Duffey*, 536 Pa. 436, 440–42, 639 A.2d 1174, 1176, *cert. denied*, 513 U.S. 884, 115 S.Ct. 223, 130 L.Ed.2d 149 (1994); *Alpizar v. United States*, 595 A.2d 991, 994 (D.C.1991); *Mott v. State*, 407 N.W.2d 581, 582–83 (Iowa 1987); *Tafoya v. State*, 500 P.2d 247, 251 (Alaska 1972), *cert.*

*denied,* 410 U.S. 945, 93 S.Ct. 1389, 35 L.Ed.2d 611 (1973); *People v. Thomas,* 41 Ill.2d 122, 125–26, 242 N.E.2d 177, 179 (1968); *Appeal in Yuma County Juv. Action No. J–95–63,* 183 Ariz. 228, 231, 902 P.2d 834, 837 (App.1995).

■ Whether parole eligibility is to be considered a direct or collateral consequence of a guilty plea is an issue of first impression for this Court. Parole eligibility typically is considered a collateral consequence and thus, information about parole eligibility is not among those consequences that a defendant must understand at the time a plea is entered. It appears "well settled that the Constitution does not require that a defendant be provided with information concerning parole eligibility." *Meyers v. Gillis,* 93 F.3d 1147, 1153 (3rd Cir.1996) (citing *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203, 208 (1985)); *see also King v. Dutton,* 17 F.3d 151, 154 (6th Cir.), *cert. denied,* 512 U.S. 1222, 114 S.Ct. 2712, 129 L.Ed.2d 838 (1994); *United States v. Garcia,* 636 F.2d 122, 123 (5th Cir. Unit A Feb.1981) (per curiam); *Hunter v. Fogg,* 616 F.2d 55, 61 (2nd Cir.1980); *Strader,* 611 F.2d at 63. Because parole is a collateral consequence of a guilty plea, the failure of the trial court to advise the defendant concerning parole eligibility does not render a plea involuntary or invalid.

■ Parole eligibility falls within the province of the Parole Commission and the executive branch, and not within the jurisdiction of the courts. Moreover, parole eligibility lacks the definite, immediate, and largely automatic characteristics that define a direct consequence. Parole depends on many factors beyond the control of the courts, ranging from diminution credits earned to the exercise of discretion by the Parole Commission. Accordingly, we hold today that parole eligibility is not a direct consequence of a plea and thus it follows that a defendant need not be informed of parole ramifications for a guilty plea to be voluntary. This same conclusion has been reached by numerous other courts, and has been implicitly recognized by the United States Supreme Court. *See, e.g., Hill,* 474 U.S. at 56, 106 S.Ct. at 369, 88 L.Ed.2d at 208 ("We

have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary...."); *United States v. Sanclemente–Bejarano*, 861 F.2d 206, 209 (9th Cir.1988) (holding, consistent with *Hill* and with "every other circuit that has addressed the question," that FED.R.CRIM.P. 11(c) does not require trial courts to inform a defendant of parole eligibility consequences of a guilty plea); *Brown v. Perini*, 718 F.2d 784, 788 (6th Cir.1983) ("This Circuit has expressly declined to consider parole eligibility a direct consequence of a guilty plea."); *Strader*, 611 F.2d at 63 ("Ordinarily, parole eligibility is ... an indirect and collateral consequence, of which a defendant need not be specifically advised by the court or counsel before entering a plea of guilty.").

Perhaps recognizing that the non-automatic nature of parole eligibility weighs strongly in favor of considering parole ramifications to be collateral consequences of a plea, Petitioner contends that the trial court in essence imposed a mandatory minimum sentence of fifteen years. He argues that when he received a life sentence of all but forty years suspended he received a mandatory term of incarceration of fifteen years because Article 41, § 4–516 requires that he serve fifteen years before becoming eligible for parole. A mandatory minimum sentence is a direct consequence of a guilty plea, and a defendant must therefore be advised of a mandatory minimum sentence in order for the plea to be valid. *E.g., Hunter*, 616 F.2d at 61. Thus, Petitioner continues, his plea was invalid because he was not informed of the mandatory minimum sentence.

We disagree and conclude that Petitioner did not receive a mandatory minimum sentence. A mandatory minimum sentence is one where the court has no discretion on whether to impose a particular or automatic sentence. *State ex. rel. Sonner v. Shearin*, 272 Md. 502, 518–19, 325 A.2d 573, 582 (1974); *State v. Coban*, 520 So.2d 40, 42 (Fla.1988); *see, e.g.,* Art. 27, §§ 36B, 36H–6, 281A, 643C. In this case, the

trial court did exercise its discretion and imposed a sentence of life with all but forty years suspended. The provisions of Article 41, § 4–516 relating to parole eligibility do not convert this sentence into a mandatory minimum sentence of fifteen years. *See Sanclemente–Bejarano,* 861 F.2d at 208–09 (rejecting similar contention by the defendant in that case). Furthermore, Article 41, § 4–516 does not change the nature of parole eligibility to make it an automatic, definite, and immediate consequence of pleading guilty. Thus, the failure to advise the defendant of the parole restrictions imposed by Article 41, § 4–516 does not render his plea invalid.

The case of *United States v. Posner,* 865 F.2d 654 (5th Cir.1989), is strikingly similar to the instant case. Posner argued that his guilty plea to aiding and abetting the possession with intent to distribute more than one hundred kilograms of marijuana was involuntary because he was not advised that his sentence was controlled by a federal statute which expressly provided that the offense was not parolable. Finding Posner's contention to be without merit, the Fifth Circuit held:

> The test for determining whether a guilty plea is voluntary is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart,* 474 U.S. 52, [56] 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985). The failure to advise a defendant of collateral consequences of a plea of guilty does not render it involuntary. *Holloway v. Lynaugh,* 838 F.2d 792, 794 (5th Cir.1988). A defendant need not be furnished with information about parole eligibility in order for his guilty plea to be voluntary and the current rules of procedure governing the entry of guilty pleas in the federal courts do not require it. *Hill,* 474 U.S. at 5[6], 106 S.Ct. at 369.

*Id.* at 660.

■ Petitioner argues in the alternative that even if the trial court had no duty to advise him of the parole ramifications of his guilty plea, his counsel's failure to advise him

properly renders his plea involuntary. Petitioner relies on this Court's decision in *Morales v. State*, 325 Md. 330, 600 A.2d 851 (1992), but his argument rests on an overbroad reading of that case. In *Morales*, we held that the defendant did not knowingly waive his constitutional right to testify in his own defense when his decision to remain silent appeared to result from incorrect information provided by the trial court. *Id.* at 335, 600 A.2d at 853. Recognizing that the trial judge had no initial duty to advise the defendant, we held that when the judge proceeded to give such advice, a duty was imposed upon the court that the advice not be erroneous. This case is distinguishable from *Morales*. In this case, the trial judge discharged his duties properly. As we have indicated, the trial court has no duty to inform the defendant of parole ramifications. This is not a case in which the trial court has provided a defendant with misinformation regarding parole, and we leave that issue for another day.

### V.

We turn next to Petitioner's claim that his counsel's misadvice concerning parole deprived him of effective assistance of counsel. The Sixth Amendment protects a defendant's right to counsel. *Strickland v. Washington*, 466 U.S. 668, 684, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674, 691 (1984); *Gideon v. Wainwright*, 372 U.S. 335, 345, 83 S.Ct. 792, 797, 9 L.Ed.2d 799, 806 (1963). Moreover, this guarantee of the right to counsel is hollow without "the right to the effective assistance of counsel." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2063, 80 L.Ed.2d at 692 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763, 773 n. 14 (1970)). In order to prevail on an ineffective assistance of counsel claim in a guilty plea setting, Petitioner must satisfy the requirements of *Strickland* and *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), and must "prove that counsel's performance was deficient and that the deficient performance prejudiced the defense." *Oken v. State*, 343 Md. 256, 283, 681 A.2d 30, 43 (1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 742, 136 L.Ed.2d 681 (1997); *see*

*also Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180, 189 (1993) (concluding that analysis in ineffective assistance of counsel cases that focuses solely on outcome determination, rather than the fundamental fairness or reliability of the proceeding, is deficient). In evaluating the claim of ineffective assistance of counsel, the Supreme Court opined that "[t]he object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699; *Oken,* 343 Md. at 284, 681 A.2d at 43.

In *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Supreme Court addressed a claim of ineffective assistance of counsel in the context of a guilty plea and held that the *Strickland* two-prong test applied to challenges to guilty pleas based on ineffective assistance of counsel. *Hill,* 474 U.S. at 57, 106 S.Ct. at 370, 88 L.Ed.2d at 209. The Court explained that in order to satisfy the "prejudice" requirement, the defendant must show that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.* at 59, 106 S.Ct. at 370, 88 L.Ed.2d at 209; *see also Armstead v. Scott,* 37 F.3d 202, 210–11 (5th Cir.1994) (applying *Lockhart v. Fretwell* analysis, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), along with the *Hill v. Lockhart* analysis, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), holding that a guilty plea was not rendered unreliable or fundamentally unfair when petitioner claimed that he would not have pleaded guilty absent the misadvice from his counsel concerning the benefits of his plea), *cert. denied,* 514 U.S. 1071, 115 S.Ct. 1709, 131 L.Ed.2d 570 (1995). The Supreme Court in *Hill* also explained that in resolving the prejudice prong of the *Strickland* test, the analysis "should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Hill,* 474 U.S. at 60, 106 S.Ct. at 371, 88 L.Ed.2d at 211 (quoting *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068, 80 L.Ed.2d at 698). Accordingly, applying the *Strickland* test that this

Court applied to ineffective assistance claims in *Bowers v. State*, 320 Md. 416, 426–27, 578 A.2d 734, 739 (1990), the defendant must show that there is a "substantial possibility" that but for counsel's errors, he would not have pleaded guilty and would have insisted upon going to trial.

We assume without deciding, as did the circuit court, that defense counsel erroneously informed Yoswick that he would be eligible for parole after serving ten years and that she did not inform him of the need to obtain the Governor's approval. We need not address the question of whether counsel's advice constituted deficient representation because we find that Yoswick has failed to show that he was prejudiced by the advice. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699; *Oken*, 343 Md. at 284–85, 681 A.2d at 43–44. Notwithstanding Yoswick's testimony that he would have proceeded to trial had he known of the parole eligibility consequences of his plea, the trial court simply did not believe him and we cannot say that credibility determination was clearly erroneous. From an objective perspective, we do not believe that a reasonable defendant in Yoswick's shoes would have insisted on going to trial even with the benefit of parole eligibility information. The post conviction court found Yoswick's testimony "self-serving." Likewise, we look askance at his claim that he would have proceeded to trial for the same reasons stated by the post conviction court, and also because Yoswick did not indicate any concern about his parole eligibility until he filed his Amended Petition for Post Conviction Relief on August 15, 1994, almost 2 years after he was sentenced.

Yoswick's bare allegation that he would not have pleaded guilty and would have insisted on going to trial had he received accurate information concerning his parole eligibility, when considered in the context of the extremely lengthy sentences facing him and in light of the self-serving nature of such a statement, is not sufficient to establish prejudice. Yoswick faced the possibility of a life sentence plus seventy years. Furthermore, he faced the possibility of additional

sentences of approximately one hundred years in Howard and Anne Arundel Counties. By pleading guilty, Petitioner received a life sentence with all but forty years suspended and a concurrent sentence of thirty years. Therefore, Petitioner's guilty plea resulted in a sentence significantly shorter than the maximum, and the possibility of facing additional charges in other counties was eliminated. The record does not reflect any reluctance on Petitioner's part to plead guilty and he clearly received the benefit of his bargain.

■ The potential strength of the State's case is also relevant in determining whether a defendant would have insisted on going to trial. *Ostrander v. Green,* 46 F.3d 347, 356 (4th Cir.1995) (noting that the potential strength of a state's case must inform analysis, inasmuch as a reasonable defendant would surely take it into account)[4]; *see Armstead,* 37 F.3d at 206. Yoswick's trial counsel recognized that the evidence in the case against Yoswick was overwhelming. The victim, Storch, was alive and available to testify against Yoswick. Two other witnesses saw Yoswick drive to a landfill to dispose of bags containing some of Storch's personal belongings, and those witnesses could either identify Yoswick or at least describe the car he drove. The child of Karen Sue Pulido, a/k/a Karen Sue Llewelyn, Yoswick's co-defendant, had identified as belonging to Yoswick a distinctive item found at the location where Yoswick had attempted to drown Storch. Furthermore, the State possessed a document describing plans for a murder, as well as written communication between Yoswick and his co-defendant expressing the belief that "if

---

4. In *Ostrander v. Green,* 46 F.3d 347, 353–54 (4th Cir.1995), the Court of Appeals engaged in a separate, threshold discussion and application of the "new rule" doctrine under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Sitting *en banc* in *O'Dell v. Netherland,* 95 F.3d 1214 (4th Cir.1996), *aff'd,* —— U.S. ——, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997), the United States Court of Appeals for the Fourth Circuit subsequently overruled that interpretation by the *Ostrander* panel. *O'Dell,* 95 F.3d at 1222. The discussion in *Ostrander* concerning the strength of a case as a factor to be considered in assessing prejudice, however, remains valid authority.

they be quiet, things will be okay." In short, the case against Yoswick was, as his counsel testified, "overwhelming."

Petitioner received additional benefits from his plea as well. By pleading guilty to the charges, Petitioner received a life sentence with all but forty years suspended and thirty years concurrent. In contrast to a straight life sentence, the Division of Corrections considers the sentence as a fixed term of confinement for purposes of mandatory supervision. Accordingly, Petitioner received a mandatory supervision date.[5] If Petitioner had received a straight life sentence, he would not have been given a mandatory supervision date.

Petitioner's final allegation is that he must first serve fifteen years before becoming eligible for parole under Article 41, § 4–516. The Parole Commission determines parole eligibility for prisoners serving life sentences pursuant to Article 41, § 4–516, and as a result, Petitioner is correct that Article 41, § 4–516 applies to a life sentence. *See Hanson v. Hughes,* 52 Md.App. 246, 253, 447 A.2d 892, 895–96, *aff'd,* 294 Md. 599, 451 A.2d 664 (1982). Petitioner is incorrect, however, that he must necessarily serve fifteen years before he becomes eligible for parole. Article 41, § 4–516(b)(1) provided that Petitioner is eligible for parole consideration after he "has served 15 years or the equal of 15 years when considering the allowances for diminution of period of confinement provided for in Article 27, § 700 and Article 27, § 638C of the Code."[6]

---

**5.** Mandatory supervision is defined in Maryland Code (1957, 1997 Repl.Vol.) Article 41, § 4–501(13):

> "Mandatory supervision" is a conditional release from imprisonment which is granted to any person sentenced after July 1, 1970 to the jurisdiction of the Division of Correction who has served the term or terms, less the deductions provided for in Article 27, §§ 700 and 704A of the Code. This conditional release was previously referred to as "mandatory release."

*See also Frost v. State,* 336 Md. 125, 128, 647 A.2d 106, 108 (1994).

**6.** Article 27, § 700 provides, in pertinent part:

> (d) *Good conduct deduction.*—(1) An inmate shall be allowed a deduction in advance from the inmate's term of confinement, subject to the inmate's future good conduct.

Under Article 27, § 700, the statute governing good conduct diminution credit, a prisoner is awarded good conduct credit at the beginning of his sentence, and thus Petitioner was initially awarded five days of good conduct credit for each month he is to serve. Therefore, in reality, he could become eligible for parole in less than fifteen years.[7] Petitioner could have

(2) For an inmate whose term of confinement includes a consecutive or concurrent sentence for either a crime of violence as defined in Article 27, § 643B of the Code or a crime of manufacturing, distributing, dispensing, or possessing a controlled dangerous substance as provided under Article 27, § 286 of the Code, this deduction shall be calculated at the rate of 5 days for each calendar month, and on a prorated basis for any portion of a calendar month, from the first day of commitment to the custody of the Commissioner through the last day of the inmate's maximum term of confinement.

\* \* \* \* \* \*

(e) *Work deduction.*—For each calendar month during which the inmate has manifested satisfactory performance of work tasks assigned to the inmate, the inmate may be allowed an additional deduction of 5 days from the inmate's term of confinement. These deductions shall commence on the first day that the task is performed and shall be made on a prorated basis for any portion of a calendar month during which the inmate performed the task. The Commissioner shall establish regulations governing the determination of deductions authorized by this subsection.

(f) *Educational deduction.*—For each calendar month during which the inmate has manifested satisfactory progress in vocational or other educational and training courses, the inmate may be allowed an additional deduction of 5 days from the inmate's term of confinement. Such deductions shall commence on the first day that the inmate participates in such courses and shall be made on a prorated basis for any portion of the calendar month during which the inmate participated in the course.

\* \* \* \* \* \*

(h) *Special projects deduction.*—For each calendar month or fraction thereof commencing on the first day of assignment, during which the inmate has manifested satisfactory progress in special selected work projects, or other special programs, the inmate may be allowed an additional deduction of days not exceeding 10 in number, from the inmate's term of confinement. Such projects and programs shall be designated by the Commissioner and approved by the Secretary of Public Safety and Correctional Services.

7. As indicated at the hearing on post conviction relief before the circuit court, it appears that Yoswick could have been eligible for parole in eleven years and two months given the good conduct diminution credits he could earn pursuant to Article 27, § 700. His parole eligibility might be reduced further if he earned diminution credits for work,

further reduced the time period by earning educational, industrial, or special project diminution credits. *See* Art. 27, § 700(e), (f), (h); COMAR 12.02.06.05.

While we do not decide whether defense counsel's performance constitutes deficient representation, we hold that Petitioner's claim that his guilty plea deprived him of his constitutional right to effective assistance of counsel fails because Petitioner has not demonstrated that had his counsel properly informed him, he would not have pleaded guilty and instead insisted upon going to trial.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.  COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.*

---

education and special projects.  See Art. 27, § 700(e), (f), (h);  COMAR 12.02.06.05.