Joseph F. **CUTHRELL**, Appellant,

v.

**DIRECTOR, PATUXENT INSTITUTION**, Appellee.

No. 71–2068.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 4, 1972.

Decided April 6, 1973.

Charles F. Morgan, Baltimore, Md. (Court-appointed counsel) (Michael Millemann, Baltimore, Md., on brief), for appellant.

Harry A. E. Taylor and Donald R. Stutman, Asst. Attys. Gen. of Maryland (Francis B. Burch, Atty. Gen. of Maryland, and Edward F. Borgerding, Chief, Crim. Div., Asst. Atty. Gen. of Maryland, on brief), for appellee.

Before HAYNSWORTH, Chief Judge, RUSSELL and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The petitioner in this habeas proceeding is a Maryland prisoner who seeks to invalidate his guilty plea as involuntary because he was not advised, before his plea was accepted, that he might, as a result of his plea, be sent to Patuxent Institution for evaluation and treatment under procedures spelt out in the Maryland Defective Delinquent Act.[1] The proceeding followed an unsuccessful appeal for post-conviction relief by the petitioner at the hands of the State Court. The District Court dismissed the proceeding as without merit and the petitioner has appealed. We affirm.

The law is clear that a valid plea of guilty requires that the defendant be made aware of all "the direct consequences of his plea." Wade v. Coiner (4th Cir. 1972) 468 F.2d 1059, 1060. By the same token, it is equally well settled that, before pleading, the defendant need not be advised of all collateral consequences of his plea, or, as one Court has phrased it, of all "possible ancillary or consequential results which are pe-

1. For a detailed statement of the Maryland Defective Delinquent Act, see Tippett v. State of Maryland (4th Cir. 1971) 436 F.2d 1153, 1155–1156, cert. dismissed

Murel v. Baltimore City Criminal Court, 407 U.S. 355, 92 S.Ct. 2091, 32 L.Ed.2d 791.

culiar to the individual and which may flow from a conviction of a plea of guilty, * * *." United States v. Sambro (1971) 147 U.S.App.D.C. 75, 454 F. 2d 918, 920; United States v. Ready (4th Cir. 1972) 460 F.2d 1238, 1239; Johnson v. United States (9th Cir. 1972) 460 F.2d 1203, 1204; Tindall v. United States (5th Cir. 1972) 469 F.2d 92.

 The distinction between "direct" and "collateral" consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment. Thus, when a defendant is sentenced under a guilty plea to the crime of escape, it is not required that the Court advise the defendant, before accepting the plea, that he is subject to the loss of his "good time" credit, previously earned, since, while the loss will increase the period of his actual confinement, it is not "a definite, practical consequence of the plea" but is discretionary with the prison authorities under Section 4165, 18 U.S.C. Hutchison v. United States (10th Cir. 1971) 450 F.2d 930, 931. Similarly, the fact that the Court fails to advise the defendant that his plea, if accepted, makes him subject to deportation proceedings, a result said to be equivalent to the "loss of both property and life; or all that makes life worth living" (Ng Fung Ho v. White, 1922, 259 U.S. 276, 284, 42 S.Ct. 492, 495, 66 L.Ed. 938) or to "a life sentence of banishment" (Jordan v. De George, 1951, 341 U.S. 223, 232, 71 S.Ct. 703, 95 L.Ed. 886 (dissenting opinion of Justice Jackson)), is deemed a collateral consequence and will not render the plea involuntary. United States v. Sambro, *supra*; United States v. Holton (7th Cir. 1956) 228 F.2d 827, 830, cert. den. 351 U.S. 963, 76 S.Ct. 1027, 100 L.Ed. 1484; United States v. Parrino (2d Cir. 1954) 212 F.2d 919, 921, cert. den. 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663; Joseph v. Esperdy (D.C.N.Y. 1966) 267 F.Supp. 492, 494. On the other hand, when a defendant pleads guilty to an offense under which he is not eligible for parole, he should be made aware of that fact before the acceptance of his plea. Paige v. United States (4th Cir. 1971) 443 F.2d 781, 782–783. The reason for this conclusion is that the right to parole has become so engrafted on the criminal sentence that such right is "assumed by the average defendant" and is directly related in the defendant's mind with the length of his sentence. Moody v. United States (8th Cir. 1972) 469 F.2d 705, 708.

 Applying the distinctions evidenced by the foregoing authorities, we are of the opinion that the fact that the acceptance of the petitioner's plea of guilty to the crime of criminal assault placed him in a class, where he *might*, as a result of the judgment in an entirely separate *civil* proceeding, in which he would be afforded counsel and all due process rights, including the right to a jury trial, be committed to Patuxent Institution for treatment and not punishment was such a collateral consequence of his plea that the failure of the trial court to advise him of such possibility will not render his plea involuntary. Commitment to the Institution was not an automatic or immediate result of his plea. His plea simply made him a member of a class as a result of which he might be ordered to be evaluated by trained experts, and one, who, if the trained experts concluded, after examination, he was a defective delinquent, would be subject to a civil trial, before either a jury or the court as the defendant might choose, on the issue whether he was a defective delinquent. Commitment thus depended not directly on the defendant's plea but on *a subsequent, independent civil trial*. It was a collateral consequence of his plea. We might add that this conclusion accords with the result reached by the Maryland Court of Special Appeals in Perry v. State of Maryland (1971) 11 Md.App. 302, 273 A.2d 635, 637, where the Court,

after citing with approval Joseph v. Esperdy, *supra*, said:

"That he (the petitioner-defendant) was not advised that he might be sent to Patuxent Institution for an evaluation as a possible defective delinquent did not make acceptance of ·the plea constitutionally impermissible." [2]

The petitioner urges, however, that when a defendant, by his plea, becomes a member of the class subject to evaluation under the Act, commitment follows, for all practical purposes, automatically. The statistics set forth in the annual reports of the Patuxent Institution refute such contention. While these statistics do not show the percentage of the eligible class who were ordered to be evaluated, they do reveal that a third of those ordered evaluated are not recommended for commitment, and, of those recommended, one-fifth prevail on a jury trial. Moreover, while the commitment is indeterminate, its continuance is subject to periodic rights of re-trial and reevaluation. Nor is the purpose of the commitment punishment; rather, it represents, as this Court said in Tippett v. Maryland, *supra*, 436 F.2d at 1157, "an enlightened and progressive experiment aimed at rehabilitating persons whose anti-social activities are occasioned, at least in part, by mental disorders". In short, commitment to Patuxent Institution is not imposed in the nature of punishment; it results from a civil, not a criminal proceeding; it does not definitely or immediately or automatically result from a guilty plea by one who, by his plea, makes himself eligible for evaluation and commitment. Failure to advise the petitioner of such possible collateral consequences of his plea accordingly did not render his plea involuntary.

The judgment of the District Court is, therefore,

Affirmed.

2. See, also, Butler v. Burke (7th Cir. 1966) 360 F.2d 118, 123–124, cert. den. 385 U.S. 835, 87 S.Ct. 79, 17 L.Ed.2d 69, in which the Court refused to invalidate a guilty plea because of the failure

of the trial court to advise the defendant of his possible commitment, as a result of his plea, under the Wisconsin Sexual Deviates Act.