**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LENROY CHAPMAN,
Petitioner-Appellee,

v.                                                                              No. 98-7419

RONALD ANGELONE,
Respondent-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
David G. Lowe, Magistrate Judge.
(CA-96-891-3)

Argued: April 6, 1999

Decided: July 20, 1999

Before NIEMEYER, WILLIAMS, and TRAXLER,
Circuit Judges.

_____

Reversed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Robert H. Anderson, III, Assistant Attorney General,
OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for
Appellant. Stephen Neil Stout, FLAX, BILLY & STOUT, Richmond,
Virginia, for Appellee. **ON BRIEF:** Mark L. Earley, Attorney General of Virginia, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Ronald Angelone, Director of the Virginia Department of Corrections (hereinafter the "Commonwealth"), appeals from an order of the district court granting, pursuant to 28 U.S.C.A.§ 2254 (West 1994 & Supp. 1998), a writ of habeas corpus to inmate Lenroy Chapman.[1] We conclude that the writ was erroneously issued and reverse.

I.

In late November 1982, Lenroy Chapman and David Chappell robbed an attendant at Jarrell's Truck Stop in Hanover County, Virginia, at gunpoint. Approximately two weeks later, Chapman and Chappell robbed the Lewistown Shell gas station in Hanover County at gunpoint. During this same time period, Chapman and Chappell also robbed a motel attendant in nearby Spotsylvania County, again at gunpoint. Each time, Chapman acted as the "getaway" driver.

After the first robbery in Hanover County, the Hanover police traced an automobile suspected to have been involved in the offense to Chapman. In December 1982, Chapman was arrested in Spotsylvania County. Later, during questioning by a Hanover County police investigator, Chapman confessed that he and Chappell had committed the robberies of the two Hanover County gas stations. He was subsequently charged with two counts of robbery and two counts of use of a firearm in the commission of a felony for the Hanover County robberies. Chapman was also charged with one count of robbery and one count of use of a firearm in the commission of a felony in Spotsylvania County for the motel robbery.

_____

[1] After Chapman filed his application for a writ of habeas corpus in the United States District Court, the parties consented to the jurisdiction of the magistrate judge with an appeal directly to this court.

On January 31, 1983, Chapman pled guilty to the charges in Hanover County, representing to the Circuit Court of Hanover County that he understood the elements of the charged offenses and was pleading guilty because he had in fact committed the offenses. Chapman further represented that he had discussed the case with his attorney and had independently reached his decision to plead guilty. After the Hanover County police investigator testified regarding Chapman's confession and the charged offenses, the circuit court accepted Chapman's plea and scheduled his sentencing to take place in April 1983. In April, however, defense counsel obtained a continuance of the sentencing in order to investigate a medical disability referenced in Chapman's presentence report and to place the Hanover County sentencing behind resolution of the pending charges in Spotsylvania County.

On May 4, 1983, Chapman pled not guilty to the charges of robbery and use of a firearm in Spotsylvania County and requested a trial by jury. The jury convicted Chapman of both charges and, on May 27, 1983, Chapman received a total sentence of 27 years.

On June 27, 1983, Chapman returned for sentencing in Hanover County. The Commonwealth recommended to the sentencing judge that Chapman receive an active sentence of 24 years for one robbery charge and the two firearm violations, with the sentence for the other robbery to be suspended. Chapman's counsel argued that the Hanover sentences should be served concurrently with the Spotsylvania sentence, but the Commonwealth opposed such an arrangement. The circuit court accepted the Commonwealth's recommendation and sentenced Chapman to 20 years on the first robbery conviction, and 40 years on the second robbery conviction, but suspended the 40-year sentence. In addition, Chapman received mandatory two-year sentences for each of the firearm charges, resulting in a total active sentence of 24 years. The circuit court, however, ruled that the Hanover sentences were to be served consecutively to Chapman's Spotsylvania sentence.

Upon being transferred to the Virginia Department of Corrections, Chapman was initially classified as parole-ineligible under Va. Code Ann. § 53.1-151.B1 (Michie 1998), which provides that "[a]ny person convicted of three separate felony offenses of (i) murder, (ii) rape or

(iii) robbery by the presenting of firearms or other deadly weapon . . . when such offenses were not part of a common act, transaction or scheme shall not be eligible for parole." Although Chapman was later advised that he was eligible for parole and parole was granted, the department reevaluated his status prior to his release and again determined that he was parole-ineligible.

On January 3, 1996, Chapman filed a pro se application for a writ of habeas corpus in the Supreme Court of Virginia, asserting that his rights under the Sixth and Fourteenth Amendments of the United States Constitution had been violated in two respects: (1) that he was denied effective assistance of counsel in Hanover County because counsel failed to inform him that he would be ineligible for parole if convicted of three armed robberies; and (2) that his guilty plea in Hanover County was not knowingly and intelligently entered because counsel failed to inform him that he would be ineligible for parole if convicted of three armed robberies.

The Commonwealth moved to dismiss Chapman's claim of ineffective assistance of counsel, asserting that Chapman had not been prejudiced by any failure on counsel's part because Chapman was bound by the admission of guilt to the charges made during his plea hearing under the state procedural rule enunciated in Anderson v. Warden, 281 S.E.2d 885 (Va. 1981). Specifically, Anderson prevents a state habeas petitioner from challenging the truth or accuracy of his own representations regarding the adequacy of his counsel and the voluntariness of his guilty plea made during a plea hearing, "unless the prisoner offers a valid reason why he should be permitted to controvert his prior statements." Id. at 888. In a one-page order, the Supreme Court of Virginia, relying exclusively on Anderson, dismissed Chapman's ineffective assistance of counsel claim. It is undisputed that, due to an oversight in the Commonwealth's motion to dismiss, the Supreme Court of Virginia did not dismiss, either procedurally or on the merits, Chapman's separate claim that his plea was not voluntarily and intelligently made because  his counsel was ineffective.

Chapman then filed an application for a writ of habeas corpus under 28 U.S.C.A. § 2254 in the district court, asserting, inter alia, that his counsel's failure to inform him that he would be ineligible for

4

parole if convicted of three armed robberies denied him effective assistance of counsel and rendered his guilty plea involuntary in violation of his Sixth and Fourteenth Amendment rights. After conducting an evidentiary hearing, the magistrate judge issued an order granting relief under § 2254, concluding that the failure of Chapman's counsel to advise Chapman of Virginia's parole-ineligibility law rose to the level of ineffective assistance of counsel and, therefore, that Chapman's plea was involuntary.**2** This appeal followed.

II.

A.

We begin with the standard of review to be applied to Chapman's claims. In his state and federal habeas applications, Chapman asserted two claims. The first alleged that Chapman received ineffective assistance of counsel as a result of counsel's failure to inform him about the parole-ineligibility law in Virginia. The second alleged that Chapman's plea was involuntary as a result of this alleged ineffective assistance of counsel.

It is undisputed that the Virginia Supreme Court did not adjudicate Chapman's federal constitutional claims on the merits. Thus, the standards contained within 28 U.S.C.A. § 2254(d) are not applicable. There is also no dispute that the Virginia Supreme Court's dismissal of Chapman's state habeas application was based exclusively upon Anderson v. Warden, which sets forth a state rule acknowledged to be an adequate and independent state law ground for decision. In such cases, federal courts are barred from reviewing the constitutional merits of the claims dismissed, absent a showing of cause and prejudice. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Yeatts v. Angelone, 166 F.3d 255, 260 (4th Cir.), cert. denied, 119 S.Ct. 1517 (1999).

_____

**2** On state habeas, Chapman asserted an additional claim that counsel was ineffective for failing to argue that Chapman's convictions were part of a common act, transaction or scheme within the meaning of Va. Code Ann. § 53.1-151.B1. This claim and two additional ones were also presented in Chapman's § 2254 application, but were dismissed by the magistrate judge. Chapman has not raised these additional claims on appeal.

In this case, however, the Virginia Supreme Court dismissed Chapman's ineffective assistance of counsel claim under the adequate and independent state law ground enunciated in Anderson, but failed to explicitly dismiss or otherwise directly address Chapman's second claim that his guilty plea was invalid because his counsel was ineffective. Although noting at one point that the second claim would be necessarily dependent upon the former, the magistrate judge conducted a de novo review of the merits of Chapman's first claim of ineffective assistance of counsel and of his second claim of entering an involuntary plea. In addition, the magistrate judge appears to have alternatively concluded that, because counsel was ineffective, Chapman had established cause and prejudice for any procedural default on the first claim.

We need not tarry long on the Commonwealth's argument that the magistrate judge erred in conducting a de novo review of Chapman's claims (and in conducting an evidentiary hearing on those claims), or that the magistrate judge erred in alternatively concluding that Chapman had shown cause and prejudice for his procedural default of the first claim. We conclude that Chapman is not entitled to federal habeas relief because, whether his claims are reviewed for "cause and prejudice" or de novo, Chapman has failed to establish that he was prejudiced by his counsel's representation in Hanover County; that is, he has not shown that had he known he would become parole-ineligible if subsequently convicted of a third armed robbery in Spotsylvania County, he would not have pled guilty to the first two armed robbery charges in Hanover County.

B.

The "test for determining the validity of a guilty plea is `whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). Where, as here, the applicant asserts that his plea was involuntary as a result of ineffective assistance of counsel in the form of erroneous advice about parole eligibility, the petitioner must show that "counsel's advice `was [not] within the range of competence demanded of attorneys in criminal cases,'" id. (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)), or stated otherwise, that it

6

"fell below an objective standard of reasonableness," <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984).

In addition, however, the applicant must establish prejudice from counsel's performance, which requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. In the context of challenges to guilty pleas based on ineffective assistance of counsel, this requires a showing "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59.

We have held that a plea of guilty is not voluntary if the defendant is not advised that parole ineligibility will result as a <u>direct</u> consequence of his plea. <u>See Bell v. North Carolina</u>, 576 F.2d 564, 565 (4th Cir. 1978); <u>Cuthrell v. Director, Patuxent Inst.</u>, 475 F.2d 1364, 1365-66 (4th Cir. 1973). Of course, this is not the situation at hand. Chapman's parole-ineligible status did not result as a direct consequence of his guilty plea to the Hanover charges. Rather, Chapman became parole-ineligible as a direct consequence of his subsequent conviction for armed robbery in Spotsylvania County. His contention in this application, therefore, is that his plea of guilty in Hanover County was involuntary, and his counsel was ineffective, because counsel failed to advise him that he would <u>become</u> parole-ineligible <u>if</u> convicted of the armed robbery charge that was pending in Spotsylvania County at the time he decided to plead guilty in Hanover County.

However, we need not determine whether or under what circumstances counsel must warn a defendant that a plea of guilty may, in the future, be counted towards parole-ineligible status because Chapman has failed to show that, had he known that an armed robbery conviction in Spotsylvania County would render him parole-ineligible, there was a reasonable probability that he would not have pled guilty in Hanover County and would have insisted on going to trial instead.

During the evidentiary hearing before the magistrate judge, Chapman testified that his attorney advised him that if he pled guilty to the charges, he would be eligible for parole after "one fourth or one sixth" of his sentence. Chapman further testified, contrary to the representa-

7

tions he made in his guilty plea hearing, that he was not guilty of the first Hanover robbery because he did not know that Chappell was going to commit the robbery beforehand. Chapman also testified that, while he did "willingly" commit the second robbery, he did so only because Chappell threatened him and his family. The bottom line, according to Chapman, is that had he known that he would be ineligible for parole, he would have pled not guilty to at least the charges arising out of the first robbery.

Chapman's counsel for the Hanover charges also testified at the evidentiary hearing concerning his representation of Chapman and, in particular, his recommendation that Chapman plead guilty to the Hanover charges. This recommendation was the result of several considerations. First, counsel had no doubt that Chapman was guilty of the Hanover charges and that he had no basis to argue otherwise. Second, counsel testified that there was no reasonable basis upon which to suppress Chapman's confession, which had been elicited by a well-respected, seasoned Hanover County police investigator.[3] Third, counsel was an experienced criminal defense attorney in Hanover County at the time of his representation. Based upon his experience, counsel knew that Hanover County juries frequently imposed the maximum or close to the maximum sentence for crimes-- life imprisonment in this case. However, counsel also knew that, while the particular circuit judge who would preside over Chapman's case was not generally inclined to reduce a jury's sentence, he was known to seriously consider mitigating factors upon a plea of guilty.

Accordingly, counsel determined that the best strategy was to "minimize the damage" if possible. With regard to possible parole, counsel testified that he was familiar with the parole ineligibility statute in Virginia, but did not recall discussing the matter of parole with Chapman. Counsel also testified that, given the overwhelming evidence of guilt on the Hanover charges, the issue of parole was not a

_____

**3** We note that Chapman also claimed during the evidentiary hearing that the Hanover County investigator was "up in[his] face" during questioning, an assertion disbelieved by the magistrate judge. In any event, Chapman admitted that he did not complain to his attorney about the questioning process at the time and he testified that the confession was not false.

focus of his discussions with his client. Rather, the focus was on pleading guilty to (1) avoid the probable imposition of a life or close to life sentence by a jury and (2) try to convince the circuit court judge to impose a lesser sentence and one which would run concurrently with any sentence imposed in Spotsylvania County if Chapman were convicted there.

The magistrate judge granted habeas relief to Chapman based upon the conclusion that, faced with a 51-year sentence without parole by pleading guilty, a reasonable person would have"rolled the dice" and demanded jury trials. Although this finding may seem persuasive at first blush, it is flawed in several respects. Most notably, the conclusion impermissibly applies the benefit of hindsight to the situation confronting Chapman and his counsel. When Chapman made the decision to plead guilty to the Hanover charges, he was not faced with the certainty of a 51-year sentence without parole. Rather, he was faced with overwhelming evidence of guilt with respect to the Hanover charges, in particular his own confession to the crimes, and most probably sentences of close to life imprisonment, or life imprisonment itself, if trials were held and sentencings left to the jury. Also, no disposition had yet been made of the Spotsylvania charges, the ultimate conviction of which resulted in his parole-ineligible status, and Chapman was not yet faced with any definite sentence in that jurisdiction. Based upon his counsel's experience with Hanover County juries and the specific Hanover County judge who would accept the plea, Chapman made an eminently reasonable decision to plead guilty to the charges in order to seek both a reduced sentence and one which could run concurrently with any sentence he might receive if convicted of the Spotsylvania charges.

We cannot emphasize enough the necessity of evaluating the situation facing Chapman and his attorney as of the time the decision was made, and resisting the temptation to expect prescience from them because we now have the benefit of hindsight. In Chapman's situation, he had no choice but to plead guilty. It is uncontroverted that there was a witness who had identified his car, he had confessed to the crimes, he had given his attorney no reason to challenge the validity of his confession, and he was facing the virtual certainty of conviction as well as the probable imposition of consecutive life sentences if he went to trial. As his attorney well recognized, he stood

9

a better chance of having his two Hanover sentences run concurrently with each other, and with any other sentence he might receive, if he pled guilty and was sentenced by the judge rather than being sentenced by juries after hard-fought trials.

Additionally, Chapman had not yet been called to court in Spotsylvania County and the ultimate disposition of those charges was unknown. Indeed, when called to answer those charges, Chapman pled "not guilty" and contested the charge at trial. There is no evidence in the record that the factors leading to a plea of "not guilty" in Spotsylvania County were the same influencing his decision in Hanover County and, presumably, they were different.

When we consider all of the circumstances facing Chapman, we conclude that the possibility of sentences being without parole after disposition of the Spotsylvania charge could not have been a factor of such significance that it would have kept Chapman from pleading guilty in Hanover County and have motivated him to insist on going to trial. Chapman's only reasonable and realistic chance to escape the certainty of substantial consecutive sentences was to plead to the Hanover charges and hope that his sentencing judge could be convinced to give as low a sentence as possible and to run the Hanover sentences concurrently with any sentences he might receive in Spotsylvania County. Even if advised of the possibility down the road of no parole, Chapman would have had no option but to heed his counsel's experience and familiarity with the Hanover judicial system and to recognize that his guilt was unassailable. The only real choice was to try to get as low a sentence as possible and that simply was not going to happen if Chapman insisted on jury trials.

What ultimately happened is that the sentencings did not go as the defendant had hoped. Chapman and his lawyer made a play for low, concurrent sentences, but the judge just did not go along with it. Nevertheless, the fact that the plan did not work out does not mean the plea was invalid or the lawyer was ineffective. Chapman did the only thing he could in Hanover and that was to plead guilty. We are confident that adding parole ineligibility upon possible conviction of a third charge could not have changed the fact that Chapman had to plead guilty; realistically he could never have gone to trial on the Hanover charges. Consequently, we hold that Chapman cannot estab-

lish that, had he been told of the possibility of parole ineligibility were he to be convicted on the Spotsylvania charges, there is a reasonable possibility he would not have pleaded guilty and would have insisted on going to trial in Hanover County. Because Chapman cannot establish prejudice, we conclude that his claims of receiving ineffective assistance of counsel and of entering an invalid guilty plea must fail.

III.

Accordingly, the order below issuing a writ of habeas corpus is reversed.

REVERSED

11