990 So.2d 600 (2008)
The STATE of Florida, Appellant,
v.
Jose RODRIGUEZ, Appellee.
No. 3D07-2834.
District Court of Appeal of Florida, Third District.
August 27, 2008.
Rehearing Denied September 23, 2008.
*601 Bill McCollum, Attorney General, and Nicholas Merlin, Assistant Attorney General, for appellant.
Peter Raben, Coconut Grove, for appellee.
Before RAMIREZ, SUAREZ, and CORTIÑAS, JJ.
CORTIÑAS, J.
Appellant, the State of Florida (the "State"), seeks review of the trial court's order determining that appellee, Jose Rodriguez ("Rodriguez"), received ineffective assistance of counsel and granting Rodriguez a new trial. We reverse.
Rodriguez was charged in a one hundred thirteen count Information which alleged the commission of one violation of the Racketeering Influence Corrupt Organization Act ("RICO"), forty-nine counts of robbery, thirty-three counts of kidnapping, nineteen counts of unlawful possession of a firearm while engaged in a criminal offense, three counts of sexual battery, six counts of attempted robbery, and three counts of aggravated assault. The Information alleged that Rodriguez was involved in at least twenty-two separate incidents giving rise to the charges. In the fall of 1987, the State made known its strategy of separating the different incidents for trial. One incident in particular was set to be tried during the first week of November 1987.
The record demonstrates that the State had substantial evidence against Rodriguez, including eyewitness testimony and physical evidence. Rodriguez's defense counsel sought to advance the defense of either misidentification or toxic psychosis as a result of cocaine intoxication. Prior to the November trial, however, the State extended a plea offer to Rodriguez to resolve all one hundred thirteen charges of the Information in exchange for a guilty plea and a term of thirty years in prison. Defense counsel recalled that the plea offer was made at a status conference prior to the commencement of trial and that he was under time constraints in his effort to *602 convey the plea offer to Rodriguez. After discussions with defense counsel, the plea offer was rejected by Rodriguez and the case proceeded to trial. Rodriguez was convicted of numerous counts pertaining to the incident that was the subject of the trial. Despite the conviction, the trial court delayed sentencing pending the resolution of the remaining charges. Following the conviction after the first trial, the State offered Rodriguez life imprisonment in exchange for a guilty plea, with a fifteen-year minimum mandatory term to resolve the remaining counts. This offer was also rejected by Rodriguez and he proceeded to trial on the second incident. Rodriguez was, once again, convicted and sentenced to several terms of life imprisonment. Afterward, the State dismissed the remaining counts pertaining to the other incidents. Rodriguez subsequently appealed his convictions, which we affirmed without opinion. Rodriguez v. State, 691 So.2d 1085 (Fla. 3d DCA 1997).
In April 1999, Rodriguez filed a motion for post conviction relief which was denied by the trial court without an evidentiary hearing. In February 2001, we reversed and directed the trial court to hold an evidentiary hearing with respect to certain issues in Rodriguez's original motion. Rodriguez v. State, 777 So.2d 1143 (Fla. 3d DCA 2001). The hearing was commenced on April 24, 2005 but, in order to allow further discovery, was continued and did not resume until September 28, 2007. At the continuation of the hearing, Rodriguez announced that he was abandoning all his claims of ineffective assistance of counsel except for his claim that defense counsel had failed to properly convey the State's original plea offer of thirty years in state prison to Rodriguez. Rodriguez, his former defense counsel, and Rodriguez's expert witness, Ray Taseff, Esq., testified at the hearing.
At the evidentiary hearing, defense counsel testified that he discussed the plea offer with Rodriguez and advised him that he would be eligible for good time, gain time, credit for time served, and possibly parole. Defense counsel also intimated to Rodriguez that he would not have to serve the entire thirty-year term. However, defense counsel stated that he had not specifically quantified the amount of time Rodriguez would serve because he did not want to mislead him. Defense counsel also testified that he recommended that Rodriguez take the plea offer.
Rodriguez testified at the evidentiary hearing that he was aware he faced life in prison and that defense counsel had informed him about the thirty-year plea offer and the possibility of parole. He further testified that defense counsel had not advised him of gain time. Despite his discussion with defense counsel, Rodriguez testified that he came away from the conversation believing that he would have to serve the full thirty years. Rodriguez admitted that he used drugs for a period of approximately eight to ten years, which included the time the plea offer was conveyed, and that his memory was affected as a result.
Following the evidentiary hearing, the trial court granted Rodriguez's motion and ordered a new trial. The trial court based its decision upon findings which included that defense counsel had advised Rodriguez of the possibility of parole even though parole had been abolished in 1983, and failed to quantify the amount of time Rodriguez could expect to serve in prison even though counsel was aware that in the late 1980's inmates were, for various reasons, serving considerably less time than the term of years imposed at sentencing. The court also found that, although defense counsel advised Rodriguez that in the event of an acquittal he would still *603 spend approximately five years in a mental hospital, he was ineffective in failing to advise him that, by accepting the plea, he faced a similar loss of liberty. The trial court further found that, even though defense counsel had recommended that Rodriguez take the plea, defense counsel failed to explain why it was in his best interest to accept the plea. This appeal from the State followed.
Claims of ineffective assistance of counsel are reviewed under the two-prong standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and, as a result, Florida courts employ a mixed standard of review deferring to the circuit court's factual findings supported by substantial competent evidence, but review the trial court's legal conclusions de novo. Sochor v. State, 883 So.2d 766, 771-772 (Fla.2004).
Strickland requires a showing of: 1) deficient performance by counsel, and 2) subsequent prejudice resulting from the deficient performance. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. In determining whether a defendant has received ineffective assistance of counsel with regard to the communication of a plea offer, Florida courts also rely upon a three-prong test requiring that a defendant allege that: 1) counsel failed to relay a plea offer or misinformed the defendant of the penalty faced, 2) the defendant would have accepted the offer, and 3) the plea would have resulted in a lesser sentence. Cottle v. State, 733 So.2d 963, 966 (Fla.1999). This Court has held that:
In determining whether a defendant, with effective assistance [of counsel], would have accepted the [plea] offer, pertinent factors to be considered include: whether counsel actually and accurately communicated the offer to the defendant; the advice, if any, given by counsel; the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer; and whether the defendant indicated he or she was amenable to negotiating a plea bargain.
State v. Moses, 682 So.2d 595, 596 (Fla. 3d DCA 1996) quoting In re Alvernaz, 2 Cal.4th 924, 8 Cal.Rptr.2d 713, 830 P.2d 747, 756 (1992).
In this case, there is no dispute that the State's plea offer was relayed to the defendant. The principle issue, therefore, is whether or not defense counsel properly advised Rodriguez. The trial court found that the case before us:
[A]ddresses affirmative statements in which the defendant's attorney misstated the state of the law and procedures at the time concerning plea bargains, failed to properly explain that law, leaving the defendant utterly incapable of making an informed decision as to whether or not to accept the plea bargain, which he most assuredly would have had he been effectively represented at that stage of the proceedings.
It is well-established that "defense counsel has the obligation to ensure that a defendant understands the direct consequences of his plea." Setzer v. State, 575 So.2d 747, 747 (Fla. 5th DCA 1991) (citing State v. Ginebra, 511 So.2d 960 (Fla.1987), superseded by rule, In re Amendments to Fla. R.Crim. P., 536 So.2d 992 (Fla.1988)). Rule 3.171(c)(2), Fla. R.Crim. P. provides:
Defense counsel shall advise defendant of:
(A) all plea offers; and
(B) all pertinent matters bearing on the choice of which plea to enter and the particulars attendant upon each plea and the likely results thereof, as well as any possible alternatives that may be open to the defendant.
*604 In Major v. State, 814 So.2d 424 (Fla.2002), the Florida Supreme Court approved the definition of direct consequences set forth in Zambuto v. State, 413 So.2d 461 (Fla. 4th DCA 1982), which provides that "[t]he distinction between `direct' and `collateral' consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." Zambuto, 413 So.2d at 462 quoting Cuthrell v. Dir., Patuxent Inst., 475 F.2d 1364, 1366 (4th Cir.1973) (emphasis added). The record demonstrates that the direct consequences of Rodriguez's plea were specifically addressed by counsel. Defense counsel testified at the evidentiary hearing:
Q: The plea offer given to you of thirty years, you went and had a conversation with Mr. Rodriguez about that, did you not?
You talked to [Rodriguez] about the plea?
A: Yes, we talked about the plea. I don't know about it being in here or back in the jail, but yes, we definitely discussed it.
Q. So you had a conversation with [Rodriguez] about the plea offer?
A: Yes.
Q: So, you went to [Rodriguez], what you did is you explained to [Rodriguez] the plea offer was thirty years to close all the cases?
A: Yes.
....
Q: Now, did you urge [Rodriguez] to take the plea?
A: I did.
On cross-examination, defense counsel further testified:
Q: To your recollection you conveyed this plea either in the courtroom, or somewhere in the courthouse?
A: Yes.
Q: And the plea was thirty years, is that a fair statement?
A: Yes.
Q: You sat down and you spoke to Mr. Rodriguez about what that mean [sic]?
A: Yes.
....
Q: Turning specifically to the case of Mr. Rodriguez, it is your testimony today that, it was your testimony in deposition that you did tell him that thirty years did not necessarily mean he would serve thirty years?
A: I believe that was discussed.
Q: He could get time off for gain time?
A: Good time and gain time.
Q: Good behavior?
A: And I may have said parole.
Defense counsel was also questioned as to testimony regarding his communication of the plea offer from a previous deposition.
Q: Page 34: "What did you tell [Rodriguez] about the length of time he would serve on a thirty-year sentence?
Answer: I don't remember, I really don't remember, that's asking too much at this point.
Question: But such a conversation took place, and you did tell him?
[Answer:] I remember being very careful to discuss the plea because there was a lot riding on it. This is something, in fact, I think the Court asked him, a conversation concerning the plea on the record at one point. I don't remember exactly what was said, but it was very important to the Court he understood. The Court, as I recall was not interested in trying *605 these cases infinitum. The Court wanted to make sure I transmitted the offer, he understood the offer, and I believe he told the Court he did."
Q: When you have conversations with Mr. Rodriguez, I guess you are being very careful to discuss this plea with him?
A: Yes.
Q: Part of being careful would be conveying to him that he could do something substantially less than thirty years, it would be really up to the Department of Corrections how much time he would do, it would be up to him and the Department of Corrections?
A: Yes, I believe I already specified I didn't quantify specifically, but yes, we did discuss gain time and good time.
Q: You did tell him he could do less than thirty years?
A: Well, I didn't use those words, I don't remember actually, maybe I did.
Furthermore, Rodriguez testified at the evidentiary hearing that, in addition to the thirty-year plea offer, he was aware of the amount of time he faced in prison. Specifically:
Q: Give me an idea, you heard me talk about how the prosecutor indicated you were facing seventeen thousand, or nineteen life sentences, did you have an idea the [sic] seriousness of these cases?
A: Not exactly as to each crime, but I knew I was facing life.
Q: Many times?
A: Yes.
Rodriguez was also aware of the evidence against him.
Q: Did [defense counsel] tell you these witnesses identified you as the perpetrator of these crimes?
A: Yes, he did.
Q: Did [defense counsel] tell you that there were police officers that were going to testify that you left your fingerprint at the scene?
A: He did tell me that.
Defense counsel advised Rodriguez of the State's plea offer and Rodriguez was well-aware of the fact that he faced several life sentences if convicted. It is also undisputed that defense counsel recommended that Rodriguez take the plea offer. Clearly, defense counsel advised Rodriguez of all direct consequences of the plea offer, including the amount of time he faced if convicted and the substantially lower prison term offered by the State.
However, throughout much of its order, the trial court cites defense counsel's failure to advise Rodriguez of matters that did not have a definite, immediate, and largely automatic effect on Rodriguez's punishment as grounds for its finding of ineffective assistance of counsel. The following are among the "substantial errors" that the court found were made by defense counsel during his conversation with Rodriguez:
Indeed, [defense counsel] testified that it was his opinion that on a thirty year sentence, Rodriguez would serve somewhere between five and eight years. What is surprising to [the court] is that [defense counsel] testified that he declined to quantify for Rodriguez the amount of time that he would serve, and he declined to advise Rodriguez his [sic] belief that Rodriguez would serve no more than one third of the thirty years.
....
It was a derogation of the trial attorney's duty not to apprise his client that in the State of Florida, in 1987, the Department of Corrections would require that an inmate serve substantially less time in prison than the sentence *606 imposed. While [defense counsel] testified that he advised Rodriguez he may be eligible for some gain time or good time, he neglected to tell Rodriguez that gain time in the State of Florida in 1987 was ten days a month; that on a thirty year sentence, Rodriguez would be immediately eligible for ten years off his sentence if only he behaved in prison....
Likewise, there seems to be no reasonable strategy for [defense counsel] not to have told Rodriguez that, in his opinion, he would serve less than one third of the sentence because of additional mitigating credits he was eligible to earn, based upon good time which allowed another twenty days a month to be earned, as well as provisional credit time, which could be given when prison population caps were exceeded, at a rate of sixty days a month.... To fail to tell Rodriguez that he would serve substantially less than the thirty years deprived Rodriguez of the facts he needed to make an intelligent decision.
....
Additionally, lawsuits had been brought in federal district court which placed a cap on the percentage of inmates the Department of Corrections could accommodate at any one time, which required provisional release credits to be granted to inmates whenever the Florida prison population reached 98%. The confluence of these factors resulted in a change in inmate release policy so that the testimony at the hearing revealed that by 1984-1985, the percentage of time a Florida inmate would serve dropped to 54.9%.
Indeed the lowest amount of time a Florida inmate would serve in the Florida Department of Corrections came in the 1988-1989 period, where the percentage of time a Florida inmate would serve dropped to 34.9%. Therefore, it is a coincidence that the thirty year plea offer to Rodriguez in 1987 came during a time when Florida inmates were serving the lowest percentage of time in recent history. Based upon the statistics adduced at the [evidentiary] hearing, Rodriguez was clearly entitled to know that, on the thirty-year plea being offered to him, is [sic] most likely that he would have served less than ten years.
....
In other words, Rodriguez was denied the opportunity to know that the plea offer of thirty years was not substantially different than him being successful in presenting his cocaine intoxication defense. Indeed, the thirty year plea offer was a guarantee that he would be out in a reasonable period of time, while the defense of voluntary use of intoxication was by no means a likely result.
(Emphasis added.)
Gain time, good time, provisional credit time, and additional mitigating credits are all collateral consequences of a guilty plea. It cannot be said with any certainty that these collateral consequences would have been automatically imposed upon Rodriguez's entry of a guilty plea. In fact, most of the potential time credits that Rodriguez may have been eligible for, depended upon external factors including Rodriguez's behavior in prison as well as the percentage of fill capacity reached by the prison population. As such, the "errors" cited by the trial court involved only collateral consequences of Rodriguez's plea and defense counsel had no duty or obligation to advise Rodriguez of same.
While there exists case law affording a defendant relief based on misinformation *607 with respect to a plea, we have found no cases which require that defense counsel advise a defendant of all possible reductions in prison time for which he may be entitled and, furthermore, there is no requirement that a defendant be given a specifically quantified amount of time that he is expected to serve in prison. This Court has previously held that "relief is not warranted where counsel merely fails to inform a client about the various ramifications of gain time as opposed to volunteering incorrect information." Henderson v. State, 626 So.2d 310, 311 (Fla. 3d DCA 1993). Moreover, "[n]either the trial court nor counsel is required to forewarn a defendant about every conceivable collateral consequence of a plea to criminal charges." Simmons v. State, 611 So.2d 1250, 1252 (Fla. 2d DCA 1992) (citing Blackshear v. State, 455 So.2d 555 (Fla. 1st DCA 1984)).
As such, defense counsel was under no affirmative obligation to quantify the amount of time in prison Rodriguez could expect to serve and had no duty to advise Rodriguez of every possible factor that would affect the amount of prison time he faced. Lastly, we find defense counsel's reference to the possibility of parole to be harmless because Rodriguez did not accept the plea and, therefore, placed no reliance on the representation that he would be eligible for parole. Based upon the foregoing, we reverse the trial court's order.
Reversed and remanded.