TRAXLER, Chief Judge,
dissenting:
David Appleby pleaded guilty to two drunk-driving related charges after being informed by the judge that the most he could get would be six years. At sentencing the judge gave him life imprisonment. Clearly established federal law requires defendants to be informed of the direct consequences of their decision to plead guilty, and the sentence for the crime to which a defendant is pleading guilty is a direct consequence of that guilty plea. I therefore believe that the decision of West Virginia’s Supreme Court of Appeals was contrary to clearly established federal law as determined by the United States Supreme Court and that the district court’s denial of Appleby’s habeas petition should be reversed. Accordingly, I respectfully dissent.
I.
A criminal defendant who pleads guilty waives many constitutional rights, “including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be an intentional relinquishment or abandonment of a known right or privilege.” McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) (footnote and internal quotation marks omitted). We may not presume a waiver to be knowing and voluntary; the record must affirmatively demonstrate that the defendant had “a full understanding of what the plea connotes and of its consequence.” Boykin v. Alabama, 395 U.S. 238, 244, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
The consequences of which the defendant must be aware before pleading guilty are the “direct consequences” of the plea. Brady v. United States, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (internal quotation marks omitted). Courts of appeal have generally understood Boykin and Brady to mean that a defendant pleading guilty must be aware of the direct consequences of the plea but need not be informed of the indirect or collateral consequences of a guilty plea. See United States v. Sambro, 454 F.2d 918, 922 (D.C.Cir.1971) (per curiam) (‘We presume that the Supreme Court meant what it said when it used the word ‘direct’; by doing so, it excluded collateral consequences.”); see also Virsnieks v. Smith, 521 F.3d 707, 715 (7th Cir.2008) (“[Although a defendant *542 must be informed of the direct consequences flowing from a [guilty] plea, he need not be informed of collateral consequences.”); Meyer v. Branker, 506 F.3d 358, 367-68 (4th Cir.2007) (“For a guilty plea to be constitutionally valid, a defendant must be made aware of all the ‘direct,’ but not the ‘collateral,’ consequences of his plea.”), cert. denied, — U.S. -, 128 S.Ct. 2975, 171 L.Ed.2d 899 (2008).
The Supreme Court has yet to catalogue all of the consequences of a guilty plea that it views as direct or indirect, but there can be no real dispute that one of the direct consequences of a guilty plea is the resulting sentence and that the Constitution therefore requires that a defendant be informed of the maximum sentence that could be imposed for the crime to which he is pleading guilty. The Supreme Court said as much in Boykin, and that has been the consistent view of the circuit courts both before and after Boykin. See Boykin, 395 U.S. at 244 n. 7, 89 S.Ct. 1709 (“ ‘If these convictions [after a guilty plea] are to be insulated from attack, the trial court is best advised to conduct an on the record examination of the defendant which should include, inter alia, an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences.’ ” (emphasis added)) (quoting Commonwealth ex rel. West v. Rundle, 428 Pa. 102, 237 A.2d 196, 197-98 (1968)); Burton v. Terrell, 576 F.3d 268, 271 (5th Cir.2009) (“[T]he Due Process [Clause] require[s] that a defendant be advised and understand the consequences of a guilty plea. With respect to sentencing, this means that the defendant must know the maximum prison term and fíne for the offense charged.” (footnote and internal quotation marks omitted)); Trueblood v. Davis, 301 F.3d 784, 786 (7th Cir.2002) (“Due process as interpreted by the Supreme Court requires that a defendant be advised of the consequences of pleading guilty. Not necessarily all the consequences, such as loss of the right to vote or of the right to own a gun, or the effect on future sentences, but certainly the maximum punishment that he faces if he is convicted in the case at hand.” (citations omitted)); United States v. Salmon, 944 F.2d 1106, 1130 (3d Cir.1991) (“Due process requires that a guilty plea be voluntary, that is, that a defendant be advised of and understand the direct consequences of a plea. The only consequences considered direct are the maximum prison term and fine for the offense charged.” (citation omitted)); see also Hart v. Marion Corr. Inst., 927 F.2d 256, 259 (6th Cir.1991); Worthen v. Meachum, 842 F.2d 1179, 1182 (10th Cir.1988), overruled on other grounds by Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Trujillo v. United States, 377 F.2d 266, 269 (5th Cir.1967); Katz v. United States, 353 F.2d 312, 314 (8th Cir.1965).
That the maximum sentence is a direct consequence of a guilty plea is important in this case because of the particular way in which the West Virginia recidivist statute operates. The statute does not authorize the imposition of a separate sentence for one who is found to be a habitual offender, but instead requires that the enhanced sentence be imposed on the underlying triggering felony. See State ex rel. Jorgenson v. Boles, 149 W.Va. 395, 141 S.E.2d 139, 141-42 (1965) (“[N]o authority existed to impose a separate sentence for the principal offense. The life sentence imposed under the recidivist statute is given for the conviction of the principal offense.” (emphasis added)). Thus, the life sentence that Appleby received was the sentence for the drunk-driving charges to which he pleaded guilty. Appleby’s guilty *543 plea therefore was not knowingly and voluntarily made — he was informed before the plea was accepted that six years was the maximum sentence he could receive and was not informed that if the State elected to proceed under the recidivist statute, Appleby would be sentenced to life imprisonment with the possibility of parole.[1]
Given that federal law clearly establishes that the maximum sentence is a direct consequence of a guilty plea, the state court erred by applying the test circuit courts have developed to distinguish the collateral consequences of a guilty plea from the direct consequences of the plea. See, e.g., Cuthrell v. Director, Patuxent Inst., 475 F.2d 1364, 1366 (4th Cir.1973) (“The distinction between ‘direct’ and ‘collateral’ consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant’s punishment.”). While the Cuthrell standard provides a useful roadmap in cases where it is unclear whether a particular consequence is direct or collateral, it cannot be used to reclassify as collateral a consequence of a guilty plea that the Supreme Court has already characterized as direct. That is, even if West Virginia’s recidivist proceedings fail every prong of the Cuthrell standard and therefore could be categorized as collateral under Cuthrell, it does not matter, because the Supreme Court has held that the maximum sentence is a direct consequence of a guilty plea. If the Supreme Court had not spoken on the issue, then it would be proper to apply the Cuthrell standard to resolve the question. But the Supreme Court has spoken, and it has said that the maximum sentence is a direct consequence of a guilty plea. This court simply cannot apply a test of its own making to reach the opposite conclusion.[2]
*544 Appleby’s sentence may have been the product of a layered and more complicated procedure than in the typical criminal case, but the material facts are that Appleby was sentenced to life on the charges to which he pleaded guilty after being told that he could be sentenced to no more than six years. Clearly established federal law requires that defendants be informed of the maximum penalty to which their guilty plea exposes them, and I am aware of no basis for excepting from this rule recidivist sentences like the one at issue in this case.[3] Appleby’s guilty plea therefore was not knowingly and voluntarily made, and the state court’s decision rejecting his Due Process claims “was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C.A § 2254(d)(1) (West 2006); see Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (explaining that a state court’s decision is contrary to clearly established federal law “if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law” or “confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite”); Robinson v. Polk, 438 F.3d 350, 355 (4th Cir.2006) (“A state court adjudication is an unreasonable application of federal law when the state court ... fails to apply the principle of a precedent in a context where such failure is unreasonable .... ” (internal quotation marks omitted)).
II.
Because I believe that the state court’s opinion rejecting Appleby’s Due Process claim was contrary to clearly established federal law, I respectfully dissent from the majority’s refusal to grant Appleby’s petition for a writ of habeas corpus.

. I should note that compliance with what I believe to be the requirements of Due Process — informing a defendant pleading guilty of the possibility of sentencing under the recidivist statute — ought not be as difficult as the State suggests it would be, notwithstanding the fact that the State might not always know at the time a guilty plea is entered whether the defendant qualifies for enhanced sentencing under the recidivist statute. In the federal system, the defendant's prior record generally is not known until the presentence report is prepared, after the defendant pleads guilty. When a defendant’s prior record could have an effect on his sentence range, we nonetheless require the district judge before accepting a guilty plea to inform the defendant of the possibility of an enhanced sentence, see, e.g., United States v. Hairston, 522 F.3d 336, 340 (4th Cir.2008) (" [Wjhile the district court at the time of the Rule 11 proceeding could not have been certain about whether Hairston would qualify as an armed career criminal, Rule 11 nonetheless required the court to anticipate the possibility and explain to Hairston the sentence that would be applicable if he had prior qualifying convictions.”), and federal district courts have not found this requirement too burdensome. State courts in West Virginia should likewise be able to generally advise defendants of the possibility of recidivist sentencing without much difficulty. As to this case, I note that the possibility of a recidivist sentence was apparent from the indictment itself, which alleges at least five prior driving-under-the-influence convictions for Appleby in West Virginia. The state trial court thus should have known simply by looking at the indictment that Appleby was eligible for sentencing as a recidivist.

. Moreover, even if it were proper to apply the Cuthrell standard, I do not believe that Cuthrell compels us to characterize West Virginia's recidivist proceedings as collateral. While a recidivist proceeding is perhaps technically separate from the underlying criminal case, the recidivist proceeding is, in function and effect, little more than a continuation of the original sentencing. And while the state prosecutor has discretion in deciding whether to seek a recidivist sentence in any given case, the resulting sentence is automatic once the prosecutor decides to proceed under the recidivist statute. See W. Va.Code. § 61-11- *544 18(c) ("When it is determined ... that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life.” (emphasis added)).

. The Supreme Court rejected various constitutional challenges to West Virginia’s recidivist statute in Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), a pre-Boykin case. There was, however, no guilty-plea challenge in Oyler, and the Court was not called upon to consider what kind of information must be given to a defendant pleading guilty to a crime that makes him eligible for sentencing as a recidivist.