**In the Matter of E.J.G.P., a Juvenile.**

No. 08–98–00245–CV.

Court of Appeals of Texas, El Paso.

Oct. 28, 1999.

M. Clara Hernandez, El Paso County Public Defender, Penny Lee Andersen, Asst. Public Defender, El Paso, for appellant.

Jose R. Rodriguez, County Atty., Ruben Gabriel Duarte, Asst. County Atty., El Paso, for State.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## *O P I N I O N*

SUSAN LARSEN, Justice.

E.J.G.P. appeals the juvenile court's disposition order, finding that she had engaged in delinquent conduct. The court placed E.J.G.P. on electronic monitor probation and ordered her to perform 200 hours of community service. For the reasons stated below, we affirm.

### *FACTS*

At the adjudication hearing on June 3, 1998, E.J.G.P. stipulated "true" to the offense of possession of marijuana fifty pounds or less, but more than five pounds. Prior to her stipulation, the juvenile court referee explained to E.J.G.P. her right to remain silent, her right to be represented by an attorney, her right to confront and cross-examine witnesses, her right to ten days notice of the State's amended peti-

tion, her right to present evidence, her right to testify, and her right to a trial by jury. Additionally, the juvenile court informed E.J.G.P. of the possibility that the trial record in this cause could become admissible during the penalty phase of a subsequent criminal proceeding, and that, if adjudicated delinquent, she could face sanctions ranging anywhere from probation to commitment to the Texas Youth Commission until her twenty-first birthday. During the adjudication hearing, E.J.G.P. testified that she knowingly and voluntarily signed a Waiver, Stipulation, and Admission, which was admitted into evidence. The court accepted E.J.G.P.'s plea of true and found that she had engaged in delinquent conduct.

At E.J.G.P.'s disposition hearing on June 26, 1998, the same referee advised her of her right to remain silent, her right to be represented by a lawyer, her right to confront and cross-examine witnesses, her right to present evidence, and her right to testify. E.J.G.P. then raised two oral motions, both of which the court denied: (1) a motion for continuance so as to determine E.J.G.P.'s citizenship; and (2) a motion to withdraw her plea of true because she was misinformed by her counsel of possible immigration consequences. Defense counsel stated that regardless of the disposition decided at the hearing, immigration officials would be arresting E.J.G.P. at the conclusion of the disposition hearing, with the intention of deporting her. In denying E.J.G.P.'s motions, the juvenile referee found that he had complied with the admonishments required by the Texas Family Code.

E.J.G.P.'s two oral motions at the disposition hearing form the basis of this appeal. Specifically, E.J.G.P. contends that her plea of true was not voluntarily given because: (1) the juvenile court did not admonish her of possible deportation consequences in accordance with Article 26.13 of the Texas Code of Criminal Procedure;[1] and (2) her plea of true was based on erroneous information from her counsel that she would face no immigration consequences.

### *Deportation a Collateral Consequence*

Section 54.03 of the Texas Family Code provides as follows:

■ § 54.03. Adjudication Hearing

(a) A child may be found to have engaged in delinquent conduct or conduct indicating a need for supervision only after an adjudication hearing conducted in accordance with the provisions of this section.

(b) At the beginning of the adjudication hearing, the juvenile court judge shall explain to the child and his parent, guardian, or guardian ad litem:

(1) the allegations made against the child;

(2) the nature and possible consequences of the proceedings, including the law relating to the admissibility of the record of a juvenile court adjudication in a criminal proceeding;

(3) the child's privilege against self-incrimination;

(4) the child's right to trial and to confrontation of witnesses;

(5) the child's right to representation by an attorney if he is not already represented; and

(6) the child's right to trial by jury.[2]

Admonishments to juveniles under Section 54.03 of the Texas Family Code are given to ensure that juveniles understand the

---

**1.** Article 26.13 provides that "[p]rior to accepting a plea of guilty or a plea of nolo contendere, the court shall admonish the defendant of ... the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law." *See* TEX.CODE CRIM. PROC. ANN. art. 26.13(a)(4) (Vernon 1989).

**2.** TEX. FAM.CODE ANN. § 54.03(a)(b) (Vernon 1996).

nature of the proceedings and the rights they possess.[3] Giving admonitions pursuant to Section 54.03 to the juvenile prior to receiving a plea is mandatory, and the failure to admonish the juvenile in accordance with Section 54.03(b) is fundamental error.[4]

In her first subpoint on appeal, E.J.G.P. argues that although the statute does not expressly mandate that the trial court admonish the juvenile defendant about immigration consequences, Section 54.03(b)(2), which addresses the "possible consequences of the proceedings," requires such an admonishment. E.J.G.P. notes that after the adjudication hearing and before the disposition hearing, the referee had access to the Probation Department's Pre–Disposition Report. Because that report noted that the juvenile was a resident alien, E.J.G.P. contends that the referee should have known that by pleading true to the petition, she risked deportation.

To begin, we are not presented with authority, nor could we find any, that holds that in a juvenile case, possible deportation falls within the ambit of the "nature and possible consequences of the proceedings" language in Section 54.03(b)(2), thereby rendering deportation a mandatory admonishment in a juvenile proceeding. Finding no case law directly on point, we must analogize from the law in other areas. Naturally enough, the law in this area is most developed in the criminal law.[5]

The first question we must decide is whether the possibility of deportation, or other immigration consequence, is a direct or collateral consequence of a plea of true in a juvenile proceeding under Texas state law.[6] A consequence is "direct" if it is definite, immediate, and largely automatic.[7] A consequence is "collateral," on the other hand, if it lies within the discretion of the court whether to impose it, or its imposition is controlled by an agency which operates beyond the direct authority of the trial judge.[8]

In *State v. Jimenez*,[9] the Texas Court of Criminal Appeals reversed this court's opinion [10] holding that deportation is a collateral consequence, that a deportation admonishment is not constitutionally required, and that, unlike the Article 26.13 admonishment requirements that apply to felonies, the Legislature chose not to require admonishments for persons charged with misdemeanors.[11] Several federal and state jurisdictions have also addressed the deportation subject and determined that deportation is a collateral consequence, not

---

3. *In re A.D.D.*, 974 S.W.2d 299, 304 (Tex. App.—San Antonio 1998, no pet.).

4. *In re D.I.B.*, 963 S.W.2d 862, 863 (Tex. App.—San Antonio 1998), *aff'd*, 988 S.W.2d 753 (Tex.1999).

5. Although juvenile proceedings are nominatively civil, they are quasi-criminal in nature. *In re R.S.C.*, 940 S.W.2d 750, 751 (Tex. App.—El Paso 1997, no pet.). Numerous aspects of a juvenile delinquency adjudication are governed by criminal law rules and statutes. *Id.* at 751–52. We find it appropriate, therefore, to look to the criminal law in analyzing the issues raised by E.J.G.P.

6. *See Guzman v. State*, 993 S.W.2d 232, 235 (Tex.App.—San Antonio 1999, no pet. h.).

7. *State v. Jimenez*, 987 S.W.2d 886, 888 n. 5 (Tex.Crim.App.1999).

8. *Id.* n. 6.

9. 987 S.W.2d 886 (Tex.Crim.App.1999).

10. *State v. Jimenez*, 957 S.W.2d 596, 598 (Tex. App.—El Paso 1997) (comparing and contrasting misdemeanor and felony defendants and holding that misdemeanor defendant has federal due process rights and Texas due course of law rights to be admonished about immigration consequences of her guilty plea separate and apart from admonishments required under Article 26.13 for felony cases), *rev'd*, 987 S.W.2d 886 (Tex.Crim.App.1999). We note that E.J.G.P. relies upon our opinion in *Jimenez*, which is no longer good law, without citation to the higher court's reversal.

11. *Jimenez*, 987 S.W.2d at 888–89; *see Hernandez v. State*, 986 S.W.2d 817, 821 (Tex. App.—Austin 1999, no pet. h.).

a direct one.[12] It is well settled that before pleading, a defendant need not be advised of all collateral consequences of his plea.[13] We therefore conclude that immigration consequences to a juvenile adjudication are a collateral consequence because they involve civil proceedings administered by an independent agency over which the trial judge has no control.[14]

◼ In a criminal proceeding, if the admonishment addresses a *direct* consequence of entering a guilty plea, and the trial court failed to administer the admonishment, the guilty plea is involuntary.[15] If the admonishment addresses a *collateral* consequence of entering a guilty plea, however, and the trial court has otherwise substantially complied with Article 26.13, then the State has satisfied its burden of establishing a prima facie showing that the plea was knowing and voluntary.[16] The burden then shifts to the defendant, who must show that he or she did not otherwise understand the consequences of entering

the guilty plea and suffered subsequent harm.[17] We believe this method of reviewing the question is sound, and we will apply it to the juvenile proceeding on appeal here.

◼ Here, even accepting E.J.G.P.'s argument that immigration consequences do fall under the "possible consequences of the proceedings," we find that the juvenile court substantially complied with the admonitions required by the Family Code, and therefore the State met its burden in establishing a prima facie showing that E.J.G.P.'s plea of true was knowing and voluntary. The burden then shifted to E.J.G.P. to show that she did not understand the consequences of entering her plea and that she was harmed.[18] This record, however, contains no evidence that E.J.G.P. was unaware of the consequences of her plea or that she was harmed by the court's failure to admonish her on that topic.[19] Based on our review of the record,

12. See, e.g., *United States v. Campbell*, 778 F.2d 764, 767 (11th Cir.1985); *Sanchez v. United States*, 572 F.2d 210, 211 (9th Cir. 1977); *Michel v. U.S.*, 507 F.2d 461, 465–66 (2d Cir.1974); *Cuthrell v. Director, Patuxent Inst.*, 475 F.2d 1364, 1366 (4th Cir.1973), *cert. denied*, 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973); *State v. Vera*, 159 Ariz. 237, 766 P.2d 110, 111 (1988); *Daley v. State*, 61 Md.App. 486, 487 A.2d 320, 322 (1985).

13. *Cuthrell*, 475 F.2d at 1365–66.

14. See *Daley*, 487 A.2d at 321–22 (citing *Michel*, 507 F.2d at 465).

15. *Guzman*, at 235.

16. *Id.* at 235, 236.

17. *Id.* at 235–36.

18. See *id.*; see also *Carranza v. State*, 980 S.W.2d 653, 658 (Tex.Crim.App.1998) (employing harm analysis in case involving adult citizen of Mexico who possessed expired green card and who was not admonished about deportation consequences and finding that Carranza met his burden of showing *"no more"* than that he was not aware of consequences of his plea and that he was misled or

harmed by court's admonishment when he affirmatively showed that he was harmed because " 'significant differences exist between an alien who does not possess valid immigration documents and an alien who has been convicted of a criminal offense' ").

19. The only mention of possible harm in the record is her counsel's representations to the court that immigration officials were on the verge of arresting and deporting E.J.G.P. There was no testimony or evidence presented to support defense counsel's motion, which was as follows:

DEFENSE COUNSEL: ... I have two motions, basically, that I—oral motions that I would like to bring to the attention of the Court.

The first motion is a motion for continuance. Basically, the grounds for the motion for continuance [is] that, as of today, the nationality—the citizenship of this juvenile hasn't been determined. The father is a U.S. citizen, and we believe that there is sufficient grounds to believe that the juvenile is also a U.S. citizen.

If—without that determination, whatever disposition that this Department makes in this case, it won't have any effect in the terms that Immigration, who has been calling this Department, will be here today and, after this hearing, without knowing the citi-

E.J.G.P. has shown neither a lack of awareness of the consequences of her plea nor that she was misled or harmed by the court's admonishment.

This subpoint is overruled.

### Voluntariness

 In her second subpoint, E.J.G.P. asserts that the juvenile court erred in not withdrawing her plea of true because her plea was based on misinformation from her attorney that she would face no deportation consequences by pleading true. E.J.G.P. contends that this misinformation rendered her plea involuntary. The trial court may allow withdrawal of a plea within its sound discretion. The appropriate standard of review by this court, therefore is abuse of discretion.[20]

In asserting this issue, E.J.G.P. relies on this court's opinion in *In re R.S.C.*[21] There, after the juvenile court denied R.S.C.'s suppression motion, R.S.C. stipulated true to unlawful carrying of a weapon.[22] R.S.C. waived various rights (but not the right to appeal the suppression ruling) and stipulated that he had intentionally and knowingly carried an illegal knife.[23] R.S.C.'s counsel also stated "no objection" to the introduction of a social history that reflected that R.S.C. had possessed a dagger.[24] Based on this, the trial court found R.S.C. had engaged in delinquent conduct.[25] On appeal, R.S.C. asserted that the trial court erred in denying his motion to suppress and this court found that the stipulation to the very evidence sought to be suppressed would normally waive the issue. This court further held, however, that R.S.C.'s waiver of rights and stipulation of evidence rendered his plea of true involuntary because "R.S.C., with the advice of his attorney, waived valuable constitutional rights and entered into the stipulation with the express understanding and assurance of the trial court that he could appeal the ruling on the motion to suppress."[26] The court noted that this holding is consistent with the rule applied to non-negotiated guilty pleas in criminal cases. There, if an open plea is entered on the mistaken understanding that the merits of a pretrial motion may be raised on appeal, the plea is not knowingly and voluntarily entered.[27]

 We find the present case distinguishable. Unlike the Fourth Amendment rights at issue in *R.S.C.*, an admonishment regarding the possibility of deportation is not of constitutional dimension.[28] Also unlike *R.S.C.*, E.J.G.P. presents neither evidence of how counsel misinformed her, nor of how she relied on any misinformation in making her plea.[29] Rather, the record

---

zenship of the juvenile, will arrest the juvenile, will take her through immigration proceedings and deportation. And whatever decision this Department makes in this case will have no effect on the juvenile. And, so, it won't be able—the Department won't be able to implement any disposition.

**20.** *Gottson v. State*, 940 S.W.2d 181, 187 (Tex. App.—San Antonio 1996, pet. ref'd).

**21.** 940 S.W.2d 750 (Tex.App.—El Paso 1997, no pet.).

**22.** *Id.* at 752.

**23.** *Id.*

**24.** *Id.*

**25.** *Id.* at 751.

**26.** *Id.* at 752.

**27.** *Id.* at 753 n. 3 (citing *Christal v. State*, 692 S.W.2d 656, 659 (Tex.Crim.App.1985) (op. on reh'g)).

**28.** *See Hernandez v. State*, 986 S.W.2d 817, 821 (Tex.App.—Austin 1999, no pet. h.).

**29.** We note, moreover, that it is far from clear that E.J.G.P.'s plea of true would render her deportable, in any event. The federal statute defining a deportable alien includes "*any* alien who at any time after admission has been *convicted* of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in Section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijua-

shows that E.J.G.P. was fully advised of the *direct* consequences[30] of her plea in accordance with Texas Family Code Section 54.03.

A plea of true to allegations of delinquent conduct, like a guilty plea, must be knowing and voluntary, but this rule is not limitless, especially as it concerns collateral consequences.[31] The rule that a valid plea must be intelligently made does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into the decision.[32] If a defendant is fully advised of the direct consequences of her plea, her ignorance of a collateral consequence does not render the plea involuntary.[33]

Here, E.J.G.P. was fully advised of the direct consequences of her plea, thus her ignorance of a collateral consequence, such as possible deportation, did not render her plea involuntary. The trial court did not abuse its discretion in refusing to withdraw E.J.G.P.'s plea of true. E.J.G.P.'s second subpoint is overruled.

### *CONCLUSION*

The judgment of the trial court is affirmed.

---

na. . . ." (Emphasis added). 8 U.S.C.A. § 1227(a)(2)(B)(i) (1999). Adjudications are not convictions. *See* Tex. Fam.Code Ann. § 51.13(a) (Vernon 1996) (providing that "an order of adjudication or disposition in a proceeding under this title is not a conviction of crime"). Because this statute addresses convictions and not adjudications, it is certainly arguable that this statute does not apply to juvenile defendants.

**30.** *See Jimenez,* 987 S.W.2d at 888–89 (holding that deportation is collateral consequence and deportations admonishments are not constitutionally required).

**31.** *See Hernandez,* 986 S.W.2d at 821.

