

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN THE MATTER OF A.A.R., | § | |
| | | No. 08-15-00051-CV |
| Appellant. | § | |
| | | Appeal from the |
| | § | |
| | | 65th District Court |
| | § | |
| | | of El Paso County, Texas |
| | § | |
| | | (TC# 1400329) |
| | § | |

**O P I N I O N**

This appeal arises from a juvenile's plea of true during his adjudication hearing. A.A.R., a juvenile, was charged with criminal mischief.[1] At the time the offense was alleged to have been committed in 2014, criminal mischief was a felony of the third degree if the amount of the pecuniary loss is $20,000 or more but less than $100,000. Act of June 19, 2009, 81st Leg., R.S., ch. 638, § 1, eff. Sept. 1, 2009, *amended by* Act of June 20, 2015, 84th Leg., R.S., ch. 1251, § 5, eff. Sept. 1, 2015 (current version at TEX. PENAL CODE ANN. § 28.03(b)(5))(criminal mischief now third-degree felony when pecuniary loss is $30,000 or more but less than $150,000).

---

[1] Although juvenile proceedings are nominatively civil, they are quasi-criminal in nature. *See In re E.J.G.P.*, 5 S.W.3d 868, 871 n.5 (Tex.App.–El Paso 1999, no pet.)(examining criminal law to analyze whether immigration consequences are within ambit of "possible consequences" of which juvenile must be advised), *citing In re R.S.C.*, 940 S.W.2d 750, 751 (Tex.App.—El Paso 1997, no pet.). Numerous aspects of a juvenile delinquency adjudication are governed by criminal law rules and statutes. *In re R.S.C.*, 940 S.W.2d at 751–52.

A.A.R. waived a jury trial, stipulated to evidence of his guilt, and pleaded "true" to the allegations in the State's petition.  The trial court accepted the plea of true, adjudicated A.A.R. delinquent, and entered a disposition of probation.  On appeal, A.A.R. argues the trial court erred in denying his motion to withdraw his plea of true because the plea was:  (1) not knowingly or intelligently made; (2) not knowingly made as the result of counsel's alleged failure to review the evidence with him; and (3) not knowingly made as he nor his parents were correctly informed as to the legal consequences of him waiving a jury trial and entering a plea of true.  We affirm.

**BACKGROUND**

At the beginning of the adjudication hearing, the trial court first inquired whether A.A.R. understood the accusations against him, and stated its understanding that A.A.R. intended to admit to them.  A.A.R. responded affirmatively to the question and statement.  The trial court then explained to A.A.R. in the presence of his father, A.R., and mother, S.G.:

THE COURT:     But before we go on with your hearing, I need to go over your rights and some other matters so that you understand the consequences of your decision.  So as I go along if you don't understand something make sure you stop me and we'll go back over it again.  All right.  I want you to make sure you understand what you are doing here.

. . .

You have the right to have Judge Gutierrez hear your case, she is the juvenile court judge for El Paso County or you can have me hear the case today.  I am the juvenile court referee for the County.  My understanding is you want to go ahead and proceed today, is that correct?

[A.A.R.]:       Yes.

THE COURT:     You also have the right to remain silent.  You don't have to say anything if you don't want to.  You have the right to be represented by an attorney, Ms. Reyes is right there with you.  If you need to talk to her during the hearing, just go ahead and

2

do so. And you have a right through your attorney to cross-examine any witness called by the State.

You have a right to have ten days to prepare for trial. You need to know that as you sit there right now you are presumed innocent. So that means legally at this stage of your case you haven't done anything wrong. Because of that you don't have to prove anything. The State is the one that's brought the allegation against you. They have to prove it and they have to prove it by bringing enough evidence into court to satisfy the jury or the judge that you did what you are accused of. So if they can't do that for some reason you'll be found not delinquent. But keep in mind that even though you don't have to do anything, if you do want to submit evidence in your defense you are free to do that, just make sure you discuss that with your attorney.

And then I'll tell you one of your most important rights is to have a jury decide your case, that's a jury trial. That is what you are scheduled for next week, so if you want to deny the allegations, we would come back next Friday or a week from this Friday and so that day we bring in a group of citizens from the community, we talk to them, eventually we would select 12 people out of that group to be your jury. They would sit here in the jury box. We start taking the evidence on Friday probably continue on until the following week. All the evidence is presented to the jury during the trial and then at the end of the trial, the jury decides if you did what you are accused of.

But my understanding is you do not want to have a jury trial, is that correct?

[A.A.R.]:        Yes.

THE COURT:    All right. Now, if you admit to the allegation here today there is a consequence for your actions that will be decided at the next hearing on October 7th and the options available to the court will be to place you on some kind of probation up to the age of 18, it can be either in home or out-of-home or commit you, that means send you away to the Texas Juvenile Justice Department up to the age of 19. We'll make that decision at the next hearing.

And then also you need to know you have a juvenile record now and this record can be used against you as an adult if you get in

trouble as an adult. So from 17 on in Texas you are considered an adult in the criminal system. If you go out after that date and you commit a crime and you are convicted then during that indication they can find out about this case here today. If they do it's probably going to have some negative impact on them. So as long as you stay out of trouble[, you] don't need to worry. But if you do get in trouble as an adult[,] it will come back on you.

The last thing you need to know is if you are not a U.S. citizen it could jeopardize your status in this country. That only applies if you are not a U.S. citizen. Do you understand?

[A.A.R.]:     Yes.

THE COURT:     Do you have any questions about anything I went over?

[A.A.R.]:     No.

THE COURT:     All right. Ms. Reyes, you concur with your client's waivers?

MS. REYES:     I do, Your Honor.

The State then recited its petition in which it alleged that A.A.R. "intentionally or knowingly damage[d] and destroy[ed] tangible property, to-wit: windows, by breaking said windows with a hammer, without the effective consent of . . . the owner," and thereby caused a pecuniary loss in the amount of $20,000 or more but less than $100,000. The following colloquy then occurred:

THE COURT:     All right. Now, did you understand the allegation?

[A.A.R.]:     Yes.

THE COURT:     Is that allegation true or not true?

[A.A.R.]:     It's true.

THE COURT:     And then I am going to show you what I just marked as exhibit one. It's entitled waiver, stipulation and admission. Do you recognize that document?

4

| | |
|---|---|
| [A.A.R.]: | Yes, sir. |
| THE COURT: | Did you just sign this? |
| [A.A.R.]: | Yes. |
| THE COURT: | Before you signed it, did you go over the contents with your attorney? |
| [A.A.R.]: | Yes, sir. |
| THE COURT: | You understood everything? |
| [A.A.R.]: | Yes. |
| THE COURT: | Do you understand you have admitted to the offense in here? |
| [A.A.R.]: | Yes, sir. |
| THE COURT: | Did anybody force you in any way or promise you anything to sign it? |
| [A.A.R.]: | No. |
| THE COURT: | You are telling me you signed it voluntarily because you did commit the offense? |
| [A.A.R.]: | Yes. |
| THE COURT: | All right.  The Court will accept your plea of true then. |

After A.A.R.'s counsel stated "No objection," the trial court admitted into evidence a document titled "Waiver, Stipulation and Admission" in which A.A.R. waived his right to a jury trial, stipulated to the State's evidence, admitted all of the allegations in the State's petition, confessed that he committed the charged offense, waived his rights to which he was entitled under Section 51.09 of the Texas Family Code, and admitted that those rights had been explained fully and that he understood those rights, particularly the right to require sufficient evidence to support the

5

judgment of the trial court.   The document bears the signatures of A.A.R. and his counsel.   Based on the evidence presented, A.A.R.'s plea of true, and its finding of true, the trial court adjudicated A.A.R. delinquent, and scheduled a disposition hearing.

A.A.R. was initially represented by one attorney, and then by another prior to and at the adjudication hearing when he entered his plea of true.   However, at the disposition hearing, A.A.R. was represented by his third attorney, Lerma, who had filed a motion to withdraw A.A.R.'s previous plea of true.   At the disposition hearing, the trial court first took up the motion to withdraw A.A.R.'s plea.   The trial court heard testimony from A.A.R.'s mother and father.

In support of the motion to withdraw, A.A.R.'s mother, S.G., a registered nurse, testified that prior to A.A.R. signing the waiver, stipulation, and admission, and entering his plea of true, she requested but was never shown or given access to the evidence against her son.   She testified that A.A.R.'s second attorney met with them twice, including the day of the plea, and explained her son pleaded true because his counsel advised they really had no choice, and it was "either a felony or maybe if we go to trial[,] he could end up in jail."   According to S.G., her son's counsel did not explain the State's burden of proof, but S.G. knew that a jury trial could be sought on the date of the plea.   Although she felt her son never had a chance for a fair trial, S.G. acknowledged her awareness that if A.A.R. had proceeded to a jury trial, the outcome was not guaranteed.   She also admitted she was aware that by entry of the plea of true, the right to a jury trial was waived, and acknowledged her son's counsel indicated if A.A.R pleaded true, punishment would consist of probation.   Regarding the legal consequences of the plea, S.G. stated she did not realize how a felony plea would affect A.A.R.'s future because she believed "it would be sealed[.]"   She did not believe A.A.R.'s plea of true was made knowingly or intelligently, but conceded it was made

voluntarily. S.G. admitted that, during the adjudication hearing, the judge admonished her son, and she did not request the plea to be withdrawn because she was afraid her son would be sentenced to jail if the case proceeded to trial.

S.G. conceded her son had confessed to a deputy at the scene of his participation in the offense, and had also written to his mother seeking her forgiveness. S.G. agreed A.A.R.'s second attorney had read the case file; had spoken with her in advance of A.A.R.'s adjudication hearing, and had informed her A.A.R. had confessed to the deputy. A.A.R.'s attorney had also told her, before and while at court, the issue of the amount of restitution would be addressed after her son was "sentenced" but counsel did not explain to her that she could be responsible for the full amount of restitution ordered by the court.

A.A.R.'s father, A.R., a hairdresser, also testified that he met his son's second attorney a few weeks before the plea, and during the adjudication hearing, counsel very briefly explained, "All [the] opportunity he had was to plead guilty[.]" A.R. stated he did not know of his son's right to a jury trial, the right to confront witnesses, or to review evidence prior to trial. Further, he did not review any evidence prior to the entry of his son's plea, and testified that his review of the evidence would have made a difference because "it would have been better for us to know what . . . the consequences [were.]" A.R., too, admitted that by proceeding to trial, the outcome is determined by a jury which could find A.A.R. guilty or not guilty. He explained that counsel had informed them that A.A.R. would subsequently have a restitution hearing, and he expected the restitution amount to be divided between the co-defendants, and did not feel that it would be fair for his son to be solely responsible for the total amount of restitution. A.R. explained that he was seeking withdrawal of the plea because he wanted his son to get a fair trial and a different outcome.

7

Although he was present when the trial court admonished his son at the adjudication hearing, A.R. did not indicate to the trial court that he did not want to proceed with the plea because he trusted counsel who had told him it was the only and best option, despite the fact that he did not believe his son's plea was made knowingly, intelligently, or voluntarily.

A.R. knew that A.A.R. had admitted his acts to Sheriff's deputies, and acknowledged his son had pleaded true in the absence of offers, promises, or threats. Despite witnessing his son sign the plea papers, A.R. did not recall that one page of the documents waived a jury trial, and stated that he did not know that A.A.R. was entitled to a jury trial because counsel informed him that his son did not have another option. A.R. admitted that counsel met with him briefly and explained that his son would be waiving his rights to a trial, and had informed him that although his son had pleaded true, a hearing would be conducted to determine the restitution amount. A.R. did not know what a stipulation was, and asserted counsel had not explained the stipulation or admission, but had informed him his son's only option was to enter a "guilty" plea. He recalled his son's mother had asked counsel for the evidence, and was informed she could not "get it." A.A.R. signed the plea papers as directed by counsel, whom they trusted, and A.R. admitted that he did not inform the trial judge at the adjudication hearing that his son's plea was involuntary or was not fair because he had been told there was no other option, and S.G. had not objected to their son's plea.

During examination of S.G., the State also elicited testimony that the idea of seeking withdrawal of A.A.R.'s plea was originally suggested by the father of a co-defendant after her son had pleaded true but before the co-defendant was scheduled to go to trial. The co-defendant's father informed S.G. that the co-defendant's attorney often tried cases with Veronica Lerma.

8

Subsequently, Lerma, whom S.G. had previously consulted with but did not hire for the adjudication proceeding, ended up representing her son at his motion-to-withdraw-plea and disposition hearing. S.G. testified that the co-defendant's father, who was a police officer, had not told S.G. the State had issued a subpoena to have her son testify against the co-defendant. S.G. was also completely unaware the State had filed and sent notice to the co-defendant's attorney days before her son's disposition hearing identifying S.G. and her son as witnesses in the co-defendant's case. S.G. freely acknowledged she had not requested Lerma to file a motion to quash the subpoena for her son to testify against the co-defendant, and was never informed that Lerma had done so in the co-defendant's case for and on behalf of S.G. and her son. S.G. understood that if her son failed to testify, the co-defendant had a greater chance of not being held responsible for any restitution amount, and her son could possibly be responsible for the total amount of restitution, which she did not believe would be fair. She ultimately acknowledged there was a possible conflict between her son's interest and the co-defendant. She also agreed that if her son withdrew his plea, did not testify against the co-defendant, and if the co-defendant was found not responsible, it would not be fair for her son to be held financially responsible for the total amount of restitution ordered by the court.

A.R. was also completely unaware his son had been subpoenaed to testify against the co-defendant until the day of his son's disposition hearing, and further, had not requested Lerma to file, nor was he aware that Lerma had filed, a motion to prevent his son from testifying against the co-defendant. He also told the trial court he was unaware the co-defendant's father had called S.G. and suggested to her that his son withdraw his plea. A.R. did not understand that his son's best interest could be adverse to the interests of the co-defendant or that the co-defendant could

9

benefit if his son was unable to testify against the co-defendant. He did, however, believe it was unfair for his son to be solely financially responsible for the total amount of restitution.

After considering the testimony and concluding arguments, the trial court observed that the case was set for a jury trial and could have proceeded to trial, however, A.A.R. had pled true and signed the plea documents. Further, the plea documents explained A.A.R.'s rights and the fact that he was giving up those rights by pleading true to the offense, and that by his signature A.A.R. was deemed to have read the plea documents. The court also noted that it always admonishes a juvenile regarding his rights and the waiver of trial, and specifically asks the juvenile whether he understands them, and in this instance, the trial court was never made aware of any questions or concerns on the part of A.A.R. or his parents regarding A.A.R.'s plea. Satisfied that A.A.R. entered a "knowing and voluntary" plea, the trial court denied the motion to withdraw the plea. At the subsequent disposition hearing, A.A.R. was placed on probation.

## DISCUSSION

In his sole issue on appeal, A.A.R. asserts the trial court erred in denying his motion to withdraw his plea of true on the basis that it was not knowingly, intelligently, and voluntarily made because his adjudication counsel purportedly failed to review the evidence with him prior to the plea stipulation and misinformed him regarding the consequences of waiving trial and pleading true. We disagree with this assertion.

We review a trial court's denial of a motion to withdraw a plea under an abuse of discretion standard. *In re E.J.G.P.*, 5 S.W.3d 868, 873 (Tex.App.–El Paso 1999, no pet.). The trial court abuses its discretion if it acts without reference to any guiding rules or principles. *In re C.J.H.*, 79 S.W.3d 698, 702 (Tex.App.–Fort Worth 2002, no pet.). That is, we consider whether the trial

court acted in an arbitrary or unreasonable manner. *Id*. That a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate an abuse of discretion. *In re L.R.*, 67 S.W.3d 332, 339 (Tex.App.–El Paso 2001, no pet.).

The assertion that A.A.R. did not have a full understanding of the proceedings and of the possible consequences of a finding of delinquent conduct is not supported by the record. During the adjudication hearing, and before accepting his plea, the court established A.A.R. had discussed the allegations with his attorney and that he fully understood the allegations made against him. There is no dispute as to whether A.A.R. and his parents were properly admonished as required by Section 54.03(b) of the Texas Family Code. TEX. FAM. CODE ANN. § 54.03(b)(West 2014). A.A.R. also signed a "Waiver, Stipulation and Admission" form indicating that he understood the consequences of his plea of true. The court asked A.A.R. if he had gone over this form with his attorney before it was signed. A.A.R. specifically stated to the court that he voluntarily signed the plea papers because he had committed the offense.

The record shows that A.A.R. was admonished, and he was aware and understood the consequences of entering a plea of true. It is apparent from the record A.A.R. entered a plea of true voluntarily and of his own free will, without any assurances or promises by the trial court or anyone else. Based on our review of the record, A.A.R.'s plea of true was entered intelligently, knowingly, and voluntarily, and A.A.R. has failed to show the trial court abused its discretion in denying the motion to withdraw the plea of true. We overrule the sole issue on appeal.

## CONCLUSION

The trial court's judgment is affirmed.

11

YVONNE T. RODRIGUEZ, Justice

April 28, 2017

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., not participating